Paul R. PARKER, Petitioner *v.* Sharon PRIEST, In Her Official Capacity as Secretary of State of the State of Arkansas, Respondent; Mike Wilson, Individually and On Behalf of The Committee to Promote Arkansas, Intervenors

96-995                                       931 S.W.2d 108

Supreme Court of Arkansas
Opinion delivered October 21, 1996

*Wright & Burke,* by: *William Randal Wright,* for petitioner.

*Winston Bryant,* Att'y Gen., by: *Kay J. Jackson DeMailly,* Asst. Att'y Gen., for respondent.

*Dover & Dixon, P.A.,* by: *David A. Couch,* for intervenors.

ANDREE LAYTON ROAF, Justice. This is an original action by the petitioner, Paul Parker, to enjoin the Respondent, Secretary of State, Sharon Priest, from placing on the ballot proposed Amendment 7, which would authorize a state lottery and legalize bingo, raffles, and casino gaming. This court has original jurisdiction over this matter pursuant to Ark. Const. amend. 7 and Ark. S. Ct. R. 6-5. The original action petition is opposed by the respondent, and by the intervenors, Mike Wilson, individually and on behalf of the Committee to Promote Arkansas, who are the sponsors of proposed Amendment 7.

The petition challenges the sufficiency of the ballot title of the proposed amendment and asserts that it is defective because: 1) it does not disclose that Oaklawn and Southland racetracks are two of the three sites designated in the amendment where casino gaming is authorized; 2) it does not state how four additional sites for casinos will be selected by the General Assembly; 3) it does not inform the voters that the primary purpose of the proposed amendment is to legalize casino gaming at Oaklawn and Southland racetracks or that its passage would grant a monopoly on the combination of pari-mutuel wagering and casino gaming to these two entities; and 4) the initiative petition filed with the Secretary of State omitted a portion of the ballot title. We hold that the failure to disclose that two of the three designated sites for casino gaming are Oaklawn and Southland racetracks causes the ballot title to be fatally deficient.

Certain general principles of law for ballot title cases have been set forth in recent cases decided by this court and are pertinent to this case. *See Parker* v. *Priest et al.*, No. 96-779 (Ark. S. Ct., Sept. 30, 1996); *Christian Civic Action Committee* v. *McCuen*, 318 Ark 241, 884 S.W.2d 605 (1994); *Bailey* v. *McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994); *Page* v. *McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994).

We have said that the majority of voters will read a proposed amendment for the first, and only, time when they read it on the ballot. *Christian, supra.* Thus, it is crucial that the ballot title not be misleading, and that it disclose enough information so that voters can make "an intelligent choice and be fully aware of the consequences of their vote." *Id.* However, it is not this court's function to "express our view on, or to determine the merits of, a proposed measure — that power is expressly reserved to the people." *Parker, supra.* Furthermore, the purpose of the initiative process

is not undermined by an initiative "that directly benefits a relative few of the people so long as the benefits to the few are not concealed from the voters." *Id.*

■ The party challenging the ballot title has the burden of proving that it is misleading or insufficient. *Christian, supra.* The petitioner is not entitled to a "ballot title that pleases him personally, as we have previously recognized the impossibility of drafting a ballot title that would suit everyone." *Parker, supra.*

■ We will further be "liberal" when construing the sufficiency of the ballot title. *Bailey, supra.* While the ballot title is not required to summarize every aspect of the initiative, it must give the voter "an intelligible idea of the scope and import of the proposed law." *Christian, supra.* In other words, the ballot title must enable the voter to "reach an intelligent and informed decision for or against the proposal and to understand the consequences of his or her vote." *Id.*

■ Finally, although the ballot title need not summarize every aspect of the initiative, if the information is "an essential fact which would give the voter serious grounds for reflection, it must be disclosed." *Bailey, supra.* Moreover, "[t]he ballot must be free from any misleading tendency, whether of amplification, or omission, or of fallacy, and it must not be tinged with partisan coloring." *Id.*

Proposed Amendment 7 has the following popular name:

AN AMENDMENT TO ESTABLISH A STATEWIDE STATE-RUN LOTTERY, TO PERMIT THE GAME OF BINGO AND RAFFLES TO BE CONDUCTED BY CHARITABLE, NON-PROFIT ORGANIZATIONS, TO AUTHORIZE CASINO GAMING AT TWO SITES IN GARLAND COUNTY AND AT TWO SITES IN CRITTENDEN COUNTY, TO PERMIT THE GENERAL ASSEMBLY TO AUTHORIZE CASINO GAMING AT UP TO FOUR ADDITIONAL SITES; TO ESTABLISH THE ARKANSAS EDUCATION TRUST FUND AND THE ARKANSAS CASINO GAMING COMMISSION.

■ As to the four sites where casinos will be located in Garland and Crittenden Counties, the ballot title states:

TO AUTHORIZE CASINO GAMING IN GARLAND COUNTY AT *TWO SITES, ONE SPECIFICALLY DESCRIBED IN THE AMENDMENT* AND ONE TO BE CHOSEN BY THE QUORUM COURT OF GARLAND COUNTY, TO AUTHORIZE CASINO GAMING IN CRITTENDEN COUNTY AT *TWO SITES BOTH OF WHICH ARE SPECIFICALLY DESCRIBED IN THE AMENDMENT.*

(Emphasis added.) However, Section 3 of the amendment provides that the four chosen sites are: Oaklawn Racetrack in Hot Springs, a site to be selected by the Garland County quorum court, Southland Racetrack in West Memphis, and a specific parcel of land in Crittenden county which is legally described. There is no hint in the ballot title that Oaklawn and Southland are two of the three predetermined sites for casino gaming. Certainly, most voters are probably familiar with Oaklawn and Southland and know that these are the only locations in Arkansas where gambling is presently allowed. Furthermore, although some voters will know that these two racetracks are located in Crittenden and Garland Counties, it is clear that the voter will not know from the ballot title that Southland and Oaklawn are two of the three sites specifically designated in the amendment for casino gaming, and that they will therefore benefit greatly from the passage of this measure. The issue is thus whether such information is "an essential fact that would give the voter serious grounds for reflection." *Bailey, supra.*

The petitioner relies on *Page* in support of his argument that the failure to disclose this information causes the amendment to be fatally flawed. In *Page*, this court rejected a casino amendment because the ballot title stated only that a casino would be authorized "at *a* designated site" which would lead the voter to believe that no site had yet been chosen. We explained that this was a fatal defect because:

> Before casting their ballots, voters no doubt would pause for reflection if they were aware "the" designated site had already been established in the proposed constitutional measure itself, thereby *guaranteeing the site's owner whatever benefits that would result from the measure's passage.*

*Id.* (Emphasis added.) However, in this instance the ballot title clearly tells the voter that three of the four sites have already been

chosen. The intervenors, who also sponsored the amendment which was removed from the ballot in 1994 in *Page*, submit that they have satisfied the standard set forth in *Page* by disclosing that the three sites have in fact been predetermined.

■ Although the facts of *Page* are not directly analogous, we find the underlying principle to be relevant. In *Page*, this court expressed a distaste for hiding from the voter that private interests will directly benefit from a measure's passage. *Id*. This concern was recently restated in *Parker*.

> The purpose of the initiative process is not undermined by the presentation to the voters of an issue that directly benefits a relative few of the people so long as the *benefits to the few were not concealed from the voters.*

*Parker, supra* (Emphasis added.) In this instance, the ballot title for Amendment 7 clearly conceals from the voters the direct benefit to Oakland and Southland, which are significant and important Arkansas gambling interests.

In *Finn* v. *McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), this court rejected an amendment that would have allowed state lotteries because the ballot title failed to mention that the amendment designated three people to serve on the State Lottery Commission. We explained:

> The electors are being asked to elect at least three people to important positions without being informed in the ballot title of the names or interests of these prospective board members, they are not even being told that named persons will be on the board.

*Id*.

■ Similarly, in *Dust* v. *Rivieria*, 277 Ark. 1, 638 S.W.2d 663 (1982), this court rejected an initiative that would have benefited a few private interests but did not disclose this matter to the voting public. In *Dust*, the ballot title stated that the amendment would create a Ratepayers Utility Board whose seven members would be appointed by various people in the Executive Department. *Id*. However, the ballot title did not mention that board members would be selected to represent specific, private interests, including environmental groups and labor organizations. *Id*. This court held that:

The voter, who is a residential or small business customer, has a right to know that these interests can direct and control the Board which is supposed to represent and advocate the interests of residential and small business consumers.

*Id.* Accordingly, this court rejected an initiative that failed to disclose in the ballot title the direct benefits to a "relatively few" special interests. It is clear that the benefit to specific private interests can indeed be a matter which would give the voter "serious grounds for reflection." We think that Oaklawn and Southland are such interests and that their identities constitute an essential fact which should have been disclosed, and indeed could have been disclosed, with fewer words than actually utilized in the ballot title.

■ In sum, it is clear that the voters are not made aware that, by voting for Amendment 7, they are not simply voting to authorize "two sites" in Garland County and "two sites" in Crittenden County, three of which are "specifically designated in the amendment." Instead, they are voting to authorize casino gaming "at Oaklawn Race Track in Hot Springs" and at "Southland Race Track in West Memphis." The failure to disclose this information is a material omission that renders the ballot title fatally defective. Consequently, we need not consider the remaining issues raised by Parker in his petition.

■ The petition is granted, and the Secretary of State is enjoined from placing proposed Amendment 7 on the November 5, 1996, general election, or in the alternative, from counting the votes cast on this issue. The mandate shall issue on October 25, 1996, unless a petition for rehearing is filed on or before that date.

Petition granted.

Special Justice Sandra Smith Hochstetter joins this opinion. Dudley, Glaze, and Corbin, JJ., dissent.

BROWN, J., not participating.

ROBERT H. DUDLEY, Justice, dissenting. The ballot title informs the voter that casino gambling would be permitted at four sites, two in Crittenden County and two in Garland County. It informs the voter that the two sites in Crittenden County have already been selected and that the descriptions of those sites are set out in the body of the amendment. It informs the voter that one of the two sites in Garland County has already been selected, and that

site is described in the body of the amendment, and that the other remains to be selected by the quorum court of Garland County.

The majority opinion strikes the proposed amendment from the November 5, 1996, general election on the ground that the ballot title does not notify the voter that the selected site in Garland County is the location of the Oaklawn race track and that one of the selected sites in Crittenden County is the location of the Southland dog race track. The question for this court to weigh is whether those omissions are of essential facts, *Finn* v. *McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), and whether they would mislead a voter or would give the voter "serious grounds for reflection." *Dust* v. *Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). It is not required that the ballot title contain a synopsis of the proposed amendment, but it should be complete enough to convey an intelligible idea of the scope and import of the proposal. *Bailey* v. *McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994).

A majority of members of this court, after weighing both sides of the argument, have concluded that the omissions are essential and would mislead a voter because the voter would not know that he or she were voting for a casino at the Oaklawn race track and the Southland race track. Granted, it would have been better if the ballot title disclosed the exact location that would benefit private interests, but what might have been better is not the test for determining whether a ballot title is misleading. The test is whether the omissions are of essential facts and would mislead a voter, and whether the ballot title is sufficient to convey an intelligible idea of the import of the proposal.

It is undisputed that the ballot title fairly discloses that casino gaming would be authorized at four locations, two in Crittenden County and two in Garland County. It is also undisputed that the ballot title clearly discloses that three of the four proposed locations have already been selected, and, consequently, a reasonable voter would understand that private, or special, interests would stand to obtain casino locations at three previously selected sites. There simply is no failure to disclose the essential facts that private or special interests stand to obtain casino locations at four locations and that three of those four have already been determined. The essence of the voter's concern is whether he or she wants to give private interests the constitutional right to build casinos at two predetermined locations in Crittenden County and two locations in Gar-

land County, with one already determined and one to be determined by the Garland County Quorum Court.

The majority opinion holds that the core of the issue before us involves the specific location of the three predetermined sites and concludes that the failure to give the specific locations of the three sites is something that would mislead the voter. I respectfully suggest that this weighing is not a weighing of the essential issue. It is only when the ballot title fails to disclose an essential fact that we strike the proposal from the ballot. *Finn* v. *McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990). The essential issues that should be weighed in this case are whether a voter would be given sufficient information by the ballot title to decide whether constitutional licenses should be given to build casinos at four locations, with three of those locations having already been selected, and whether the voter would be informed by the ballot title that private interests stand to obtain these licenses from passage of the proposed amendment. Whether the site is specifically described is not of real consequence to the voter. However, even if the majority should be correct that the specific site should be the issue weighed by this court, the ballot title provides that the three predetermined tracts are specified in the amendment itself. The ballot title notifies a voter that if he or she wishes to know about the specific location of the three sites upon which casinos would be located, he or she can look in the amendment to find them. The material part of the title is as follows:

> TO AUTHORIZE CASINO GAMING IN GARLAND COUNTY AT *TWO SITES, ONE SPECIFICALLY DESCRIBED IN THE AMENDMENT* AND ONE TO BE CHOSEN BY THE QUORUM COURT OF GARLAND COUNTY, TO AUTHORIZE CASINO GAMING IN CRITTENDEN COUNTY AT *TWO SITES BOTH OF WHICH ARE SPECIFICALLY DESCRIBED IN THE AMENDMENT.*

The amendment then provides that one of the locations in Garland County is the Oaklawn race track and that one of the locations in Crittenden County is the Southland race track.

In summary, there is no material omission of an essential issue from the ballot title; it conveys an intelligible idea of the scope and import of the proposed amendment. Therefore, I respectfully dissent.

CORBIN, J., joins in this dissent.

TOM GLAZE, Justice, dissenting. I dissent. Proposed Amendment 7 is only eight (8) pages long and its ballot title comprises 393 words and provides for lottery, bingo, raffles, and casino gambling. There is nothing complex or lengthy about this proposal. In fact, this court finds only one problem with the ballot title of this proposal: It does not specifically mention "Oaklawn" or "Southland" as being the two predesignated sites in Garland and Crittenden counties where casino gambling would occur if the proposal is adopted by the people at the November 5 General Election.

I find it incredibly naive on this court's part to think Arkansas voters would not know Oaklawn and Southland were the designated sites for casino gambling under proposed Amendment 7. I find it even more farfetched for the court to suggest Arkansas voters' decisions would be affected because Oaklawn's and Southland's actual names do not appear in the ballot title.

The ballot title clearly apprises the voters that two sites, one in Garland County and another in Crittenden County, have already been selected where casino gambling will be authorized. In sum, the voters know by reading the ballot title that two owners or enterprises — one in Garland County and the other in Crittenden County — will benefit by the passage of proposed Amendment 7. This is not the situation found in *Page* v. *McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994), where we held the ballot-title reference to "a designated site" misled voters to believe a site for casino gambling was *yet* to be selected when, in fact, the site and landowner had already been established in the proposed amendment.

Again, the ballot title here informs all voters that a site in Garland County and in Crittenden County have already been selected, and if it were the intention of the sponsors of proposed Amendment 7 to mislead or hide from Arkansas voters the entities who own those two preselected sites, it has to be the worst-guarded secret in Arkansas. The Oaklawn and Southland names are found not only in other initiative gambling proposals intended to be placed on the General Election ballot, but also their names saturate the advertisements seeking passage of those proposals.

In my view, this court should not remove an initiative measure from the ballot unless it is clear the proposal's ballot title will mislead the voters from making an intelligent choice. Our constitution and

case law requires this court to be liberal when construing a ballot title's sufficiency. *Bailey* v. *McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994).

The ballot title here fully discloses that two predesignated sites have been chosen for casino gambling, and to suggest Arkansas voters cannot cast an intelligent vote in these circumstances is insulting, in my view.

CORBIN, J., joins this dissent.