SLIP OPINION

Cite as 2016 Ark. 337

# SUPREME COURT OF ARKANSAS

No. CV–16–796

|  |  |
|---|---|
| CHUCK LANGE AND BILL WALMSLEY INDIVIDUALLY AND ON BEHALF OF COMMITTEE TO PROTECT ARKANSAS' VALUES/STOP CASINOS NOW | Opinion Delivered October 13, 2016 |
| PETITIONERS | AN ORIGINAL ACTION |
| V. | PETITION GRANTED; MOTION TO DISMISS DENIED. |
| MARK MARTIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF THE STATE OF ARKANSAS | |
| RESPONDENT | |
| ARKANSAS WINS IN 2016, LLC, AND ARKANSAS WINNING INITIATIVE, INC. | |
| INTERVENORS | |
| CYNTHIA R. STONE, JEFF CROCKETT, AND LARRY WITCHER | |
| INTERVENORS | |

**KAREN R. BAKER, Associate Justice**

Petitioners, Chuck Lange and Bill Walmsley, Individually, and on Behalf of Committee to Protect Arkansas' Values/Stop Casinos Now ("Lange"), bring this original action challenging the legal sufficiency of the ballot title for Issue No. 5, a proposed constitutional amendment with the popular name "An Amendment to Allow Three Casinos

to Operate In Arkansas, One Each In the Following Counties: Boone County, Operated by Arkansas Gaming and Resorts, LLC; Miller County, Operated by Miller County Gaming, LLC; and Washington County Gaming, LLC," (hereinafter "the Amendment"). On September 1, 2016, the Respondent, Secretary of State, declared the sufficiency of, and certified to place on the ballot, Issue No. 5 on the November 8, 2016 ballot. Lange contends that the Amendment is legally insufficient; thus, the Amendment should be removed from the general-election ballot, and any votes cast for the measure should not be counted or certified. On September 9, 2016, the sponsors of the Act, Arkansas Wins In 2016, LLC, Arkansas Winning Initiative, Inc. (hereinafter "Sponsor Intervenors") and Cynthia R. Stone, Jeff Crockett, and Larry Witcher, Arkansas residents and taxpayers intervened in this matter (hereinafter "Individual Intervenors"). On September 19, 2016, Arkansas Wins In 2016 filed a motion to dismiss and Lange timely responded.

This court has original jurisdiction of this case pursuant to Ark. Sup. Ct. R. 6-5(a) (2016). Rule 6-5(a) provides that this court has original jurisdiction in "extraordinary actions required by law, such as suits attacking the validity of statewide petitions filed under Amendment 7 of the Arkansas Constitution." Amendment 7 to the Constitution is codified in Article 5, § 1 of the Arkansas Constitution and is referred to as Amendment 7. Ark. Const. art. 5, § 1, amended by amend. 7.

Lange presents two points in his petition: (1) The ballot title is legally insufficient; and

(2) the amendment violates federal law and the United States Constitution.[1]

We turn now to the Amendment at issue. The text of the ballot title of the Amendment is as follows:

Ballot Title

An amendment to the Arkansas Constitution authorizing three casinos to operate in Arkansas, one in Boone County, Arkansas, operated by Arkansas Gaming and Resorts, LLC, an Arkansas Limited Liability Company, one in Miller County, Arkansas, operated by Miller County Gaming, LLC, an Arkansas Limited Liability Company, and one in Washington County, Arkansas, operated by Washington County Gaming, LLC, an Arkansas Limited Liability Company, all being subject to the laws enacted by the General Assembly in accord with this amendment and regulations promulgated by the Arkansas Gaming Commission in accord with laws enacted by the General Assembly; defining casino gaming and gaming as dealing, operating, carrying on, conducting, maintaining, or exposing for play any game played with cards, dice, equipment, or any mechanical, electromechanical, or electronic device or machine for money, property, checks, credit, or any representative value, as well as accepting wagers on sporting events or other events, including, without limiting the generality of the foregoing, any game, device, or type of wagering permitted at a casino operated within any one or more of the States of Louisiana, Mississippi. Missouri, Nevada, Oklahoma, Tennessee, or Texas as of November 8, 2016, or as subsequently permitted thereafter; creating the Arkansas Gaming Commission to regulate casinos in accord with laws enacted by the General Assembly, with the Arkansas Gaming Commission comprised of five (5) commissioners, each appointed by the Governor for staggered 5-year terms; providing for the General Assembly to appropriate monies to or for the use of the Arkansas Gaming Commission; requiring each casino to pay to the Arkansas State Treasury as general revenues a net casino gaming receipts tax equal to eighteen percent (18%) of its annual net casino gaming receipts; requiring each casino to pay to the county in which the casino is located a net casino gaming receipts tax equal to one-half of one percent (0.5%) of its annual net casino gaming receipts; requiring each casino to pay to the city or town in

---

[1]In his petition, we note that Lange has also presented a challenge to the signatures on the petitions submitted by the Sponsor Intervenors. On September 9, 2016, we ordered bifurcation, appointed a special master, and set a briefing schedule for the signature challenge, which will be addressed in a separate opinion.

SLIP OPINION

which the casino is located a net casino gaming receipts tax equal to one and one-half percent (1.5%) of its annual net casino gaming receipts; defining annual net casino gaming receipts as gross receipts for a 12-month period from casino gaming less amounts paid out or reserved as winnings to casino patrons for that 12-month period; subjecting each casino to the same income, property, sales, use, employment and other taxation as any for-profit business located in the county and city or town in which the casino is located, except that the Arkansas Gross Receipts Act of 1941 and local gross receipts taxes shall not apply to casino gaming receipts; allowing a casino to operate any day for any portion or all of any day; allowing the selling or complimentary serving of alcoholic beverages in casinos during all hours the casino operates but otherwise subject to all applicable Arkansas laws involving the distribution and sale of alcohol; permitting the shipment into Boone, Miller, and Washington counties in Arkansas of gambling devices shipped and delivered in accordance with applicable federal law (15 USC §§ 1171-1178 and amendments and replacements thereto); rendering the provisions of this amendment severable; declaring inapplicable all constitutional provisions and laws to the extent they conflict with this amendment, but not otherwise repealing, superseding, amending, or otherwise affecting Amendment 84 (bingo or raffles) or Amendment 87 (state lottery) to the Arkansas Constitution, or Arkansas Act 1151 of 2005 (Electronic Games of Skill).

## I. *Ballot Title*

The first issue before the court is whether the ballot title is legally sufficient. With regard to ballot titles, we have explained,

> [O]ur decisions upon the sufficiency of ballot titles have been so numerous that the governing principles are perfectly familiar. On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. We have recognized the impossibility of preparing a ballot title that would suit every one. Yet, on the other hand, the ballot title must be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and it must not be tinged with partisan coloring.

*Bradley v. Hall*, 220 Ark. 925, 927, 251 S.W.2d 470, 471 (1952) (internal citations omitted).

The applicable standard for review of ballot-title cases requires that "ballot titles must include an impartial summary of the proposed amendment that will give voters a fair

understanding of the issues presented and of the scope and significance of the proposed changes in the law." *Parker v. Priest*, 326 Ark. 123, 129, 930 S.W.2d 322, 325 (1996). The ballot title must be (1) intelligible, (2) honest, and (3) impartial. *Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002). "However, this court is neither to interpret a proposed amendment nor discuss its merits or faults." *Id.* at 359, 86 S.W.3d at 891 (internal citations omitted). The ballot title is sufficient if it "informs the voters with such clarity that they can cast their ballot with a fair understanding of the issue presented." *Ferstl v. McCuen*, 296 Ark. 504, 509, 758 S.W.2d 398, 400 (1988) (internal citations omitted). "This Court is liberal in construing Amendment 7 and in determining the sufficiency of a ballot title under that amendment. *Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992); *Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990); *Dust v. Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). But if information omitted from the ballot title is an essential fact which would give the voter serious ground for reflection, it must be disclosed. *Finn v. McCuen, supra*; *Gaines v. McCuen, supra*; *Hoban v. Hall*, 229 Ark. 416, 316 S.W.2d 185 (1958); *Walton v. McDonald*, 192 Ark. 1155, 97 S.W.2d 81 (1936). It is not required that the ballot title contain a synopsis of the proposed amendment, but it should be complete enough to convey an intelligible idea of the scope and import of the proposal. *Plugge v. McCuen*, [310 Ark. 449, 838 S.W.2d 348 (1992)]; *Bradley v. Hall, supra*; *Westbrook v. McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931)." *Bailey v. McCuen*, 318 Ark. 277, 284–85, 884 S.W.2d 938, 942 (1994).

In addition, when reviewing a challenge to the ballot title, the court recognizes that Amendment 7 of Article 5, § 1 "places the burden upon the party challenging the ballot title

SLIP OPINION

to prove that it is misleading or insufficient." *Cox v. Daniels*, 374 Ark. 437, 444, 288 S.W.3d 591, 595 (2008) (internal citations omitted). Applying these standards, we turn to Lange's challenges to the ballot title.

## A. Sports Gambling

Lange first asserts that the ballot title is legally insufficient because it misleads the voters when it fails to inform the voters that federal law, the Professional and Amateur Sports Protection Act, 28 U.S.C.A. § 3701–04,(hereinafter "PASPA"), prohibits Arkansas, and other states, from authorizing sports gambling. Lange notes that the ballot title states that casinos will be authorized to "accept wagers on sporting events or other events" and offer "any game, device, or type of wagering permitted at a casino operated within . . . Nevada," which is misleading. Lange contends that the title is patently misleading to the voter because it offers "something that cannot be done in Arkansas." Lange further asserts that this fact is an essential fact that would give the voter serious ground for reflection and must be disclosed.

The Sponsor Intervenors respond that Lange has misrepresented PASPA because PASPA does not prohibit all sports gambling but allows "parimutuel animal racing or jai-alai games." The Sponsor Intervenors further respond that the Amendment is not legally insufficient because the Amendment directs the General Assembly to pass legislation to fulfill the Amendment and in its enabling legislation, the General Assembly will "take into account applicable federal laws when it enacts laws." The Sponsor Intervenors contend that the General Assembly will not permit sports gambling and thus, Lange's argument is without merit. The Individual Intervenors further assert that the Amendment contains a severability

SLIP OPINION

clause, and any language that is contrary to federal statutory law and constitutional law may be struck, and the remainder of Amendment would still stand. Lange replies that the ballot title is materially misleading as written and the ballot title simply does not inform the voter that PASPA prohibits sports gambling which the Amendment purports to allow.

The ballot title language at issue is:

An amendment to the Arkansas Constitution authorizing three casinos to operate in Arkansas, . . . defining casino gaming and gaming as . . . accepting wagers on sporting events or other events, including, without limiting the generality of the foregoing, any game, device, or type of wagering permitted at a casino operated within . . . Nevada, . . . as of November 8, 2016[.]

PASPA provides in pertinent part:

It shall be unlawful for--

(1) a governmental entity to sponsor, operate, advertise, promote, license, or authorize by law or compact, or

(2) a person to sponsor, operate, advertise, or promote, pursuant to the law or compact of a governmental entity, a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games.

28 U.S.C.A. § 3702 (Westlaw through P.L. 114-222).

In addition, PASPA provides limited exceptions to the application of PASPA:

(a) Section 3702 shall not apply to-

(1) a lottery, sweepstakes, or other betting, gambling, or wagering scheme in operation in a State or other governmental entity, to the extent that the scheme was conducted by that State or other governmental entity at any time during the period beginning January 1, 1976, and ending August 31, 1990;

(2) a lottery, sweepstakes, or other betting, gambling, or wagering scheme in

7

operation in a State or other governmental entity where both--

(A) such scheme was authorized by a statute as in effect on October 2, 1991; and

(B) a scheme described in section 3702 (other than one based on parimutuel animal racing or jai–alai games) actually was conducted in that State or other governmental entity at any time during the period beginning September 1, 1989, and ending October 2, 1991, pursuant to the law of that State or other governmental entity;

(3) a betting, gambling, or wagering scheme, other than a lottery described in paragraph (1), conducted exclusively in casinos located in a municipality, but only to the extent that--

(A) such scheme or a similar scheme was authorized, not later than one year after the effective date of this chapter, to be operated in that municipality; and

(B) any commercial casino gaming scheme was in operation in such municipality throughout the 10-year period ending on such effective date pursuant to a comprehensive system of State regulation authorized by that State's constitution and applicable solely to such municipality; or

(4) parimutuel animal racing or jai–alai games.

(b) Except as provided in subsection (a), section 3702 shall apply on lands described in section 4(4) of the Indian Gaming Regulatory Act (25 U.S.C. 2703(4)).

28 U.S.C.A. § 3704.

The Sponsor Intervenors do not suggest that any of the exceptions to PASPA are applicable here.

Turning to the ballot title before us, in reviewing a ballot title, our test for gauging materiality and the impact of omitted language in a ballot title is whether knowledge of that language would give the voters a serious basis for reflection on how to cast their ballots. The title informs voters that the Amendment will permit sports gambling, as well as any type of

wagering allowed in Nevada, which necessarily includes wagers on sports. However, here, PASPA prohibits sports gambling in Arkansas. Accordingly, the Amendment's language clearly conflicts with federal law that prohibits sports gambling in Arkansas. Yet the ballot-title does not inform the voters that the Amendment violates federal law.[2] The ballot title in this case does not honestly and accurately reflect what is contained in the proposed Amendment. Therefore, we conclude that this omission is significant to the Amendment. The voters are entitled to a ballot title that is honest, impartial, and intelligible and will give them a fair understanding of the issues presented. Here, Lange has met his burden. We conclude that the ballot title of the proposed Amendment is insufficient. It fails to convey to the voter the scope and import of the proposed measure. Accordingly, we grant the petition on this point. Because we grant the petition on Lange's first point, we do not reach the remaining points challenging the sufficiency of the ballot title or Lange's challenge to the constitutionality of the Amendment. Finally, we shorten the time for issuance of the mandate to five days and direct that any petition for rehearing be filed within five days from

---

[2]In contrast, in *Cox v. Martin*, 2012 Ark. 352, 423 S.W.3d 75, this court declined to strike a ballot title as insufficient on the grounds that the Act would violate federal law. However, in that case the first sentence of the ballot title began:

AN ACT MAKING THE MEDICAL USE OF MARIJUANA LEGAL UNDER ARKANSAS STATE LAW, BUT ACKNOWLEDGING THAT MARIJUANA USE, POSSESSION, AND DISTRIBUTION FOR ANY PURPOSE REMAIN ILLEGAL UNDER FEDERAL LAW

Thus, the voter was adequately informed and could make a reasoned decision in the voting booth. The Amendment in this case contains no such statement.

the date that this opinion is issued.

Petition granted; motion to dismiss denied.

Special Justice WARREN E. DUPWE joins in this opinion.

BRILL, C.J., concurs.

WOOD, J., dissents.

GOODSON, J., not participating.

**HOWARD W. BRILL, C.J., concurring.** I am concurring for the general policy reason set forth in *Wilson v. Martin*, 2016 Ark. 334.

*Friday, Eldredge & Clark, LLP*, by: *Elizabeth Robben Murray*, *Ellen Owens Smith*, and *Amanda J. Fray*; *Wright, Lindsey & Jennings, LLP*, by: *Stephen R. Lancaster*, *Justin T. Allen*, and *Jacob P. Fair*, for petitioners.

*AJ Kelly*, General Counsel and Deputy Secretary of State, for respondent.

*Dover Dixon Horne PLLC*, by: *Todd Wooten*, *Thomas S. Stone*, *Randall L. Bynum*, *Mark Allison*, and *Monte D. Estes*, for intervenors Arkansas Wins In 2016, LLC, and Arkansas Winning Initiative, Inc.

*Steel, Wright & Gray & Hutchinson PLLC*, by: *Nate Steel*, *Alex T. Gray*, and *Jeremy Hutchinson*, for intervenors Cynthia R. Stone, Jeff Crockett, and Larry Witcher.