Cite as 2024 Ark. 149

# SUPREME COURT OF ARKANSAS
**No.** CV-24-492

|  |  |
|---|---|
| JENNIFER MCGILL, INDIVIDUALLY AND ON BEHALF OF THE ARKANSAS CANVASSING COMPLIANCE COMMITTEE; AND CHEROKEE NATION ENTERTAINMENT, LLC<br>PETITIONERS | **Opinion Delivered:** October 17, 2024<br><br>AN ORIGINAL ACTION |
| V. |  |
| JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS ARKANSAS SECRETARY OF STATE<br>RESPONDENT | PETITION DENIED. |
| LOCAL VOTERS IN CHARGE, A BALLOT QUESTION COMMITTEE; AND JIM KNIGHT, INDIVIDUALLY AND ON BEHALF OF LOCAL VOTERS IN CHARGE<br>INTERVENORS |  |

**KAREN R. BAKER, Associate Justice**

Petitioners Jennifer McGill, individually and on behalf of the Arkansas Canvassing Compliance Committee; and Cherokee Nation Entertainment, LLC ("CNE"), filed this original action seeking an order to invalidate the proposed constitutional amendment ("Proposed Amendment") concerning the Pope County casino license. The petitioners' two-count petition alleges that the decision of respondent, John Thurston, Arkansas Secretary of State, to certify the Proposed Amendment was invalid. In Count I, the

petitioners allege that the number of signatures collected is insufficient once invalid signatures are removed from Thurston's count. In Count II, the petitioners allege that the popular name and ballot title are insufficient. Local Voters in Charge (LVC), a ballot question committee and sponsor of the Proposed Amendment; and Jim Knight, individually and on behalf of LVC moved to intervene in this action. In *McGill v. Thurston*, 2024 Ark. 120, at 1 (per curiam), we granted expedited consideration of the petition and the motion to intervene. We bifurcated the proceedings of Count I and Count II and set separate briefing schedules. As to Count I, we appointed Special Master Randy Wright to resolve the factual disputes raised in the petition and was recently addressed in *McGill v. Thurston*, 2024 Ark. 146. This opinion addresses Count II—challenges to the popular name and ballot title. We have jurisdiction pursuant to Rule 6-5 of the Arkansas Supreme Court Rules. We deny the petition.

On March 20, 2024, Tim Griffin, Arkansas Attorney General, certified the popular name and ballot title for the Proposed Amendment as follows:

<u>Popular Name</u>

An amendment requiring local voter approval in a countywide special election for certain new casino licenses and repealing authority to issue a casino license in Pope County, Arkansas.

<u>Ballot Title</u>

An amendment to the Arkansas Constitution, Amendment 100, § 4, subsection (i), to reduce the number of casino licenses that the Arkansas Racing Commission is required to issue from four to three; amending Amendment 100, § 4, subsections (k) through (n), to repeal authorization for a casino in Pope County, Arkansas and to repeal the authority of the Arkansas Racing Commission to issue a casino license for Pope County, Arkansas; amending Amendment 100 § 4, to add subsection (s), providing that if the Arkansas Racing Commission, or other governing body, issues a casino license for a casino in Pope County, Arkansas prior to the effective date of this Amendment, then said license is revoked on the

effective date of this Amendment; amending Amendment 100 § 4, to add subsection (t), providing that if a future constitutional amendment authorizes the issuance of a casino license in any county other than those issued now or hereafter for Crittenden County (to Southland Racing Corporation), Garland County (to Oaklawn Jockey Club, Inc.) and Jefferson County (to Downstream Development Authority of the Quapaw Tribe of Oklahoma and later transferred to Saracen Development, LLC), then the quorum court of each county where a casino is to be located shall call special election by ordinance to submit the question of whether to approve of a casino in the county; amending Amendment 100 § 4, to add subsection (t)(1)-(3), setting the date for the special election and requiring the ordinance calling the special election to state the election date and to specify the format of the question on the ballot as "FOR a casino in [ ] County" and "AGAINST a casino in [ ] County," and, "The question presented to voters must include whether or not a casino may be located in the county"—"A casino is defined as a facility where casino gaming is conducted"; amending Amendment 100 § 4, to add subsection (t)(4), requiring the county board of election commissioners to publish the ordinance calling the special election as soon as practicable in a newspaper of general circulation in the county in which the special election is held; amending Amendment 100 § 4, to add subsection (t)(5), requiring a majority of those in the county who vote at the election in certain counties where a future casino is proposed to be located to approve of the casino at the special election before the Arkansas Racing Commission, or other governing body, may accept any applications for a casino license in that county; making this Amendment effective on or after November 13, 2024; providing that the provisions of this Amendment are severable in that if any provision or section of this Amendment or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect any other provision or application that can be given effect without the invalid provision or application; and repealing all laws or parts of laws in conflict with this Amendment.

On July 31, 2024, Thurston certified the Proposed Amendment to be placed on the November 5, 2024 general-election ballot.

On August 1, 2024, the petitioners filed their original action petition in this court.[1] The petitioners set forth the following history as relevant to the present appeal: In 2018, voters legalized casino gaming in Arkansas through the passage of Amendment 100 of the Arkansas Constitution. Amendment 100 authorized the licensing and operation of four casinos in the following counties: Crittenden, Garland, Jefferson, and Pope. The petitioners

---

[1]The petitioners filed their amended original action petition on August 22, 2024.

3

allege Choctaw Nation ("Choctaw") applied for the casino license in Pope County but was unsuccessful. The distance from the Choctaw casino in Pocola, Oklahoma, and the proposed casino in Pope County is less than one hundred miles. LVC was funded solely by Choctaw who, as of June 30, 2024, had contributed $5.3 million to the present initiative petition in an attempt to protect the business interests of its Oklahoma casino. On June 27, 2024, CNE was awarded the Pope County casino license. Attached as an exhibit to petitioner's petition is an economic development agreement ("EDA"), which established an economic relationship between Pope County and Cherokee Nation Businesses, LLC ("CNB").[2]

With regard to the popular name and ballot title, the petitioners assert that they are riddled with flaws. The petitioners present the following six arguments on appeal: (1) the popular name and ballot title fail to provide sufficient information to voters; (2) the popular name misleads voters into believing that the Proposed Amendment does not revoke an existing license; (3) the popular name, ballot title, and text of the Proposed Amendment expressly state that the Proposed Amendment restricts future amendments; (4) the ballot title fails to comport with the text of the Proposed Amendment; (5) the popular name fails to comport with the text of the Proposed Amendment; and (6) the ballot title fails to disclose conflicts with federal law.

*Motion to Dismiss*

As an initial matter, we first turn to the intervenors' motion to dismiss CNE, which we ordered to be taken with the case on August 30, 2024. During briefing, the intervenors filed their motion to dismiss CNE arguing that while CNE is the current holder of the Pope

---

[2]CNE is owned by CNB.

County casino license, it is not a registered voter or a sponsor. They assert that CNE does not have standing to bring this action and that its interests in the matters are purely private. The intervenors assert that any claims CNE may have with regard to the Proposed Amendment—such as those that attack the constitutionality of the Proposed Amendment—are not ripe for review.

The petitioners respond that CNE attempts not only to litigate constitutional claims but also to challenge the ballot title and popular name for being misleading in multiple ways, including, but not limited to, failing to inform voters that a license has been issued and that the Proposed Amendment would nullify the license. Because CNE is the current holder of the Pope County casino license that the Proposed Amendment would revoke if passed, we deny the intervenors' motion to dismiss CNE.

*Law and Analysis*

We now turn to our standards governing the sufficiency of popular names and ballot titles. The popular name is primarily a useful legislative device that need not contain the same detailed information or include exceptions that might be required of a ballot title. *May v. Daniels*, 359 Ark. 100, 194 S.W.3d 771 (2004). The purpose of a popular name is to identify the proposal for discussion prior to the election. *Id*. The popular name is not held to the same stringent standards and need not be as explicit as a ballot title; however, it cannot contain catch phrases or slogans that tend to mislead or give partisan coloring to a proposal. *Id*. Thus, the popular name must be intelligible, honest, and impartial. *Id*. This court considers the popular name along with the ballot title in determining its sufficiency. *Id*.

5

The standards of review for ballot titles are as follows: (1) ballot titles must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law; (2) they cannot omit material information that would give the voter serious ground for reflection; and (3) they must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. *Scott v. Priest*, 326 Ark. 328, 331, 932 S.W.2d 746, 747 (1996) (citing *Parker v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996)). While it is not required that the ballot title contain a synopsis of the amendment, the title must convey an intelligible idea of the scope and import of the proposed law. *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994). The ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. *Roberts v. Priest*, 341 Ark. 813, 821, 20 S.W.3d 376, 380 (2000).

The sufficiency of a ballot title is a matter of law to be decided by this court. *Bailey*, 318 Ark. at 284, 884 S.W.2d at 942. It is not our purpose to examine the relative merit or fault of the proposed changes in the law; rather, our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. *Wilson v. Martin*, 2016 Ark. 334, at 8, 500 S.W.3d 160, 166. In other words, "[t]he question is not how the members of this court feel concerning the wisdom of this proposed amendment, but rather whether the requirements for submission of the proposal to the voters have been met." *Id.* Our most significant rule in determining the sufficiency

of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. *Armstrong v. Thurston*, 2022 Ark. 167, at 9, 652 S.W.3d 167, 174. The burden of proof is on the party challenging the ballot title to prove that it is misleading or insufficient. *Id.* at 8, 652 S.W.3d at 174.

I. *Popular Name and Ballot Title Fail to Provide Sufficient Information*

First, the petitioners argue that the popular name and ballot title fail to provide sufficient information to voters. Specifically, the petitioners argue that the popular name and ballot title fail to disclose that a license has already been issued to CNE to conduct casino gaming in Pope County and that Choctaw is asking Arkansas voters to revoke a license for Choctaw's benefit. The petitioners argue that knowing that a vote for the Proposed Amendment means a license will be pulled from a current license holder could certainly give voters pause in the voting booth. Also knowing that a vote will nullify a contract—the EDA—worth millions of dollars to Pope County could give voters pause. To support their position, the petitioners rely on *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994), and *Parker v. Priest*, 326 Ark. 386, 931 S.W.2d 108 (1996). However, as Thurston and the intervenors point out, these cases are not helpful to the petitioners.

In *Bailey*, this court considered a ballot title and proposed amendment to workers'-compensation laws. We ultimately held that two of the ballot title omissions were material, which rendered the ballot title fundamentally misleading. 318 Ark. at 288–89, 884 S.W.2d at 944. First, the petitioners argued that the ballot title was silent on attorney's fees available on appeal to the Workers' Compensation Commission or the appellate courts. We noted

7

that the ballot title contained language restricting legal fees to 25 percent, which would send the message that all legal fees, including legal fees on appeal, would be limited. However, the proposed amendment would remove the fee caps altogether. We held that this omission "would give some voters serious ground for reflection on how to cast their ballots." *Id.* at 287, 884 S.W.2d at 943. We further explained that the "restriction" language had a tendency to mislead with respect to legal fees on appeal. *Id.* at 287, 884 S.W.2d at 943. A second material omission in the ballot title concerned the construction of workers'–compensation laws. We explained that the proposed amendment stated that workers'–compensation laws would be liberally construed, but the ballot title as certified was silent on this liberal construction. We held that "the materiality of the two omissions, the tendency to mislead, and the fact that the voters would need this information to make an intelligent decision on the amendment give us no alternative but to conclude that the ballot title is fundamentally misleading." *Id.* at 288–89, 884 S.W.2d at 944.

The petitioners cite *Parker*, 326 Ark. 386, 931 S.W.2d 108, for the proposition that ballot initiatives must identify entities that will greatly benefit from a measure. However, in *Parker*, the ballot title stated that the proposed amendment would "authorize casino gaming in Garland County at two sites, one specifically described in the amendment and one to be chosen by the quorum court of Garland County" and that it would "authorize casino gaming in Crittenden County at two sites both of which are specifically described in the amendment." *Id.* at 390, 931 S.W.2d at 110. However, the proposed amendment was specific about the predetermined sites. Thus, we explained that voters are not simply voting to authorize "two sites" in Garland County and "two sites" in Crittenden County, three of

8

which are "specifically designated in the amendment." Instead, they are voting to authorize casino gaming "at Oaklawn Race Track in Hot Springs" and at "Southland Race Track in West Memphis." *Id*. at 392, 931 S.W.2d at 111. We explained that there was no hint in the ballot title that Oaklawn and Southland are two of the three predetermined sites for casino gaming. *Id*. at 390, 931 S.W.2d at 110. In sum, we held that the failure to disclose this information was a material omission that rendered the ballot title fatally defective. *Id*. at 392, 931 S.W.2d at 111.

Thus, *Bailey* and *Parker* concern ballot titles that were misleading when compared to the text of the proposed amendment. That is not the case here because the ballot title informs the voter that if a casino license has been issued, it will be revoked by the proposed amendment. The ballot title plainly states: "[I]f the Arkansas Racing Commission, or other governing body, issues a casino license for a casino in Pope County, Arkansas prior to the effective date of this Amendment, then said license is revoked on the effective date of this Amendment[.]"

We reject the petitioners' argument that the popular name and ballot title are insufficient because they fail to disclose that CNE has already been issued a license and that Choctaw will greatly benefit from this measure. A popular name need not identify all future scenarios. *Stiritz v. Martin*, 2018 Ark. 281, at 3, 556 S.W.3d 523, 527. "[B]ecause so little is required of a popular name, we have never held a proposed measure invalid solely because of an incomplete description of the act by the popular name." *Id*. at 4, 556 S.W.3d at 527 (citing *Gaines v. McCuen*, 296 Ark. 513, 516, 758 S.W.2d 403, 404–05 (1988)). The popular name is an identification tool and simply cannot explain every eventuality of the actual

9

amendment. *Stiritz*, 2018 Ark. 281, at 4, 556 S.W.3d at 527. Further, the ballot title is not required to account for every possible occurrence that might impose some effect upon the amendment's operation. *Id*. at 7–8, 556 S.W.3d at 529. Accordingly, we are not persuaded by the petitioners' argument that the popular name and ballot title fail to provide sufficient information to the voters.

II. *Revocation of Existing License*

Second, the petitioners argue that the popular name misleads voters into believing that the Proposed Amendment does not revoke an existing license. The petitioners contend that the popular name is misleading because it implies that the Proposed Amendment is only prospective. The petitioners argue, however, that the ballot title and the Proposed Amendment contemplate the revocation of an existing casino gaming license if one is issued prior to the effective date. They assert that the voter is led to believe that the Proposed Amendment is only prospective ("authority to issue") rather than retroactive (e.g., "repealing an issued casino license").

Again, the popular name states as follows:

An amendment requiring local voter approval in a countywide special election for certain new casino licenses and repealing authority to issue a casino license in Pope County, Arkansas.

As set forth above, the popular name is primarily a useful legislative device that need not contain the same detailed information or include exceptions that might be required of a ballot title. *May*, *supra*. Again, because so little is required of a popular name, we have never held a proposed measure invalid solely because of an incomplete description of the act by the popular name. *Stiritz*, *supra*. Additionally, we must consider the ballot title with

10

the popular name to determine the popular name's sufficiency. *Knight v. Martin*, 2018 Ark. 280, at 6, 556 S.W.3d 501, 506. As the intervenors point out, although the popular name does not explicitly state that the Proposed Amendment will revoke an existing casino license for Pope County, the ballot title states that "if the Arkansas Racing Commission . . . issues a casino license for Pope County, Arkansas prior to the effective date of this Amendment, then said license is revoked[.]" Thus, the popular name, when read together with the ballot title, contemplates the very scenario before us and is not misleading.[3]

Next, the petitioners contend that the popular name suggests that the measure would allow for "certain new casino licenses" after "local voter approval in a countywide special election," but the Proposed Amendment extends no such authority. However, they contend

---

[3] The dissent takes issue with our holding on this point. However, we note that at the time the popular name and ballot title were drafted and certified, there was uncertainty as to the status of the license because it had not yet been awarded. To be clear, the Attorney General certified the popular name and ballot title on March 20, 2024. In anticipation of the July 5 constitutional deadline to file petitions with the Secretary of State, the signature collection process began thereafter. However, on June 27—eight days prior to the July 5 deadline—CNE was awarded the license. The dissent states that "[c]ritically, not only does the ballot title not state that a license previously *issued* (past tense) in Pope County will be revoked, it explicitly states the only licenses issued now are in Crittenden, Garland, and Jefferson Counties." However, at the time the popular name and ballot title were drafted, a license had not been issued in Pope County. In order to comply with the dissent's position, the drafters would have been placed in the impossible situation of predicting an uncertain future event. But most importantly, to state that a license had been previously issued would have been factually inaccurate at the time. The language employed by the drafters is not misleading and in fact anticipated that while a license had not yet been awarded, it could be.

The concurrence states that "the majority . . . go[es] too far in interpreting the actual amendment." However, this is too strict of a view of this court's role. Instead, we are called to ensure that the ballot title conveys an intelligible idea of the scope and import of the proposed amendment. *Bailey*, *supra*. This requires more than what the concurrence suggests. Therefore, we disagree that we have "go[ne] too far."

that the opposite is true—the text of the measure prevents issuance of new casino licenses unless there is local voter approval. Thurston responds that this is a misreading of the popular name. Read as a whole, the popular name makes clear that the Proposed Amendment would "requir[e] local voter approval . . . for certain new casino licenses" to be issued. The popular name says nothing about local voters creating new licenses. We agree. On this issue, the petitioners have not carried their burden of proving that the popular name is misleading.

### III. *Future Constitutional Amendments*

Third, the petitioners argue that the popular name, ballot title, and text of the Proposed Amendment expressly state that the Proposed Amendment restricts future amendments. Specifically, that a local election will be required if a future amendment authorizes additional casinos. The petitioners contend that it is legally impossible for this Proposed Amendment to restrict future amendments, which means that the popular name and ballot title are misleading. To support their position, the petitioners rely on an Attorney General Opinion:

> Under Amendment 7, the initiative power includes creating new law (as parts of your proposed measure would do) and repealing existing law (as parts of your proposed measure would also do). But nothing in Amendment 7 allows the circulation of petitions asking citizens to support the repeal of a law that does not yet exist. Because such a "preemptive repeal" falls outside the scope of initiatives under Amendment 7, it is misleading to suggest to voters that an initiative could accomplish that goal.

Op. Ark. Att'y Gen. No. 009 (2024).

Thurston and the intervenors respond that the Proposed Amendment at issue does not repeal a law that does not yet exist. Instead, it states that if a future casino license is

12

authorized by a constitutional amendment, then a local special election shall be held in the county where the casino is to be located. Accordingly, the popular name and ballot title are not misleading.

IV.    *Ballot Title Fails to Comport with the Text of the Proposed Amendment*

Fourth, the petitioners argue that the ballot title fails to comport with the text of the Proposed Amendment. When certifying the popular name and ballot on March 20, 2024, the Attorney General edited the ballot title by deleting the phrase "majority of the voters in a county" and substituted "majority of those in the county who vote at the election." The petitioners contend that this change conflicts with the text of the Proposed Amendment. While the ballot title was changed, the petitioners note that the Proposed Amendment was not, and as a result, the ballot title and Proposed Amendment are inconsistent.

Section (3)(t)(5) of the Proposed Amendment states that "[a] majority of the voters in the county where the casino is proposed to be located must approve of a casino at the special election[.]" The petitioners argue that the Proposed Amendment requires a majority of registered voters, not a majority of those actually voting on the measure.  The petitioners argue that because "majority of registered voters" is a substantially higher requirement than a majority of those casting voters, the ballot title does not accurately reflect the Proposed Amendment and is insufficient.

The intervenor's respond that when the Attorney General made this change to the ballot title, his office concluded that "the Arkansas Supreme Court has long defined 'a majority of voters' to mean the majority of those who actually vote on an issue, not those who could have voted." Citing case law relied on by the Attorney General, Thurston and

13

the intervenors argue that a "majority of qualified electors in a county" has "a fixed legal meaning, to-wit: a majority of those who voted on the proposition." *Glover v. Hot Springs Kennel Club, Inc.*, 230 Ark. 544, 553, 323 S.W.2d 902, 907 (1959).

We decline to engage in the interpretation and construction of the text of the Proposed Amendment. *See Armstrong v. Thurston*, 2022 Ark. 167, at 13–14, 652 S.W.3d 167, 177. Further, we hold that this alleged discrepancy does not render the ballot title insufficient.

Next, the petitioners argue that the Proposed Amendment would amend article 5 of the Arkansas Constitution by requiring a heightened standard but that nothing in the ballot title puts the voter on notice of this heightened standard.

The intervenors respond that petitioners are proceeding from an incorrect premise— that the ballot title must account for all possible legal effects and consequences of the Proposed Amendment. Relying on *Armstrong*, *supra*, the intervenors argue that the ballot title does not have to contain language speculating about a potential amendment to article 5. In *Armstrong*, the intervenors argued that the ballot title was misleading because it did not explain that the proposed amendment would affect the industrial-hemp industry in Arkansas. According to the intervenors, the definition of "cannabis" in the proposed amendment includes industrial hemp. They argued that the ballot title omitted the fact that the proposed amendment covers industrial hemp and misled voters into thinking it does not cover the industry and, accordingly, did not give voters a fair understanding of the effect of their vote. Further, they contended that the ballot title did not disclose that the proposed amendment would affect existing state and federal law governing industrial hemp and would

14

potentially implicate the constitutional rights of industrial-hemp growers in Arkansas. We held that the lack of discussion of the proposed amendment's possible effects on the industrial-hemp industry in the ballot title did not render it insufficient. Finally, we held that assessing the impact, if any, of the proposed amendment on the industrial-hemp industry is beyond the scope of our review of the ballot title. *Id.* at 14, 652 S.W.3d at 177.

We agree with the intervenors and find *Armstrong* helpful here. Accordingly, the lack of the discussion of the Proposed Amendment's possible effects on article 5 does not render it insufficient.

V.       *Popular Name Fails to Comport with the Text of the Proposed Amendment*

Fifth, the petitioners argue that the popular name fails to comport with the text of the Proposed Amendment. The Attorney General substituted the popular name of the Proposed Amendment and changed "any new casino license" to "certain new casino licenses." However, the petitioners argue that the Attorney General did not, and may not, change the text of the Proposed Amendment. They contend that the popular name, aimed at "certain" licenses, conflicts with the plain language of the Proposed Amendment, aimed at "any" licenses and that it is misleading.

Section 3 of the Proposed Amendment states:

Requiring the county quorum court to call a special countywide election on the question of whether to approve of any future casino to be located in the county, *excepting casinos operating in Crittenden County (pursuant to a license issued now or hereafter to Southland Racing Corporation), Garland County (pursuant to a licensed issued now or hereafter to Oaklawn Jockey Club, Inc.) and Jefferson County (pursuant to a license issued now or hereafter to Downstream Development Authority of the Quapaw Tribe of Oklahoma and later transferred to Saracen Development, LLC).*

(Emphasis added.)

Thurston responds that the phrase "certain new casino licenses" is in no way misleading. Instead, it is an accurate summary of the text of the Proposed Amendment as the Proposed Amendment will apply to some casino licenses but not to casino licenses already issued to Southland, Oaklawn, and Saracen. Accordingly, we hold that the popular name is not misleading on this basis.

VI.     *Conflicts with Federal Law*

The petitioners' final argument is that the ballot title fails to disclose conflicts with federal law. Specifically, they argue that the Proposed Amendment violates the Takings Clause, Contracts Clause, Equal Protection Clause, and Procedural Due Process Clause of the United States Constitution. They also contend that the Proposed Amendment violates, or at least amends, sister clauses of the Arkansas Constitution. Relying on *Lange v. Martin*, 2016 Ark. 337, 500 S.W.3d 154, the petitioners argue that a ballot title must inform the voters that the proposed amendment will violate federal law. In *Lange*, the ballot title at issue informed the voters that the amendment would permit sports gambling, as well as any type of wagering allowed in Nevada, which necessarily included wagers on sports. However, at the time, the Professional and Amateur Sports Protection Act, 28 U.S.C.A. § 3701–04, prohibited Arkansas, and other states, from authorizing sports gambling. We explained that the "[a]mendment's language *clearly conflicts with federal law* that prohibits sports gambling in Arkansas. Yet the ballot-title does not inform the voters that the Amendment violates federal law." *Id*. at 9, 500 S.W.3d at 159 (emphasis added). In sum, we held that the ballot title was insufficient because it did not honestly and accurately reflect what was contained in the

16

proposed amendment, and we concluded that this omission was significant to the amendment. *Id.*

Unlike the clear conflict with federal law in *Lange*, there is no such conflict at issue here. We will review a proposal's validity if the measure is "clearly contrary to law." *Armstrong*, 2022 Ark. 167, at 14, 652 S.W.3d at 177. As Thurston correctly points out, if any conflict exists, this could only be discerned from a fact-intensive application of federal and state law to the Proposed Amendment. However, this analysis is beyond the scope of our review of the ballot title.

In sum, we hold that the popular name and ballot title are an intelligible, honest, and impartial means of presenting the Proposed Amendment to the people for their consideration. We hold that it is an adequate and fair representation without misleading tendencies or partisan coloring. Therefore, as to Count II, we deny the petitioners' request to remove the measure from the ballot. The mandate herein will issue immediately.

Petition denied.

Mandate to issue immediately.

WOOD, J., concurs.

WOMACK, J., dissents.

**RHONDA K. WOOD, Justice, concurring.** I concur with the majority's result. I find myself in the strange predicament of agreeing in part with the majority and in part with the dissent. Both the majority and dissent go too far in interpreting the actual amendment.

17

That is not our role at this stage. In reviewing a popular name and ballot title, we do not engage in interpretation of the proposed amendment itself.[1]

**SHAWN A. WOMACK, Justice, dissenting.** Because both the popular name and ballot title of this proposed amendment mislead the voters of Arkansas, the proper disposition of this original action is to enjoin the Secretary from canvassing or certifying any ballots cast for the proposed amendment at the November 5, 2024, general election.[1]

This court decides the sufficiency of a popular name and ballot title as a matter of law.[2] When reviewing the sufficiency of a proposed popular name and ballot title, this court's role is "to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly."[3] If presented as written, the proposed "amendment requiring local voter approval in a countywide special election for certain new casino licenses and repealing authority to issue a casino license in Pope County, Arkansas," would not be fair to the people of Arkansas because it is plainly misleading.

---

[1]*Armstrong v. Thurston*, 2022 Ark. 167, at 13, 652 S.W.3d 167, 177; *Rose v. Martin*, 2016 Ark. 339, at 8, 500 S.W.3d 148, 153 ("[T]his court does not interpret a proposed amendment or discuss its merits or faults.").

[1] *See, e.g., Christian Civic Action Committee v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994) (holding that the ballot title did not adequately inform the voters to allow them to make an intelligent choice for or against the proposed constitutional amendment).
[2]*Armstrong v. Thurston*, 2022 Ark. 167, at 8, 652 S.W.3d 167, 174.

[3]*Roberts v. Priest*, 341 Ark. 813, 818, 20 S.W.3d 376, 379 (2000) (quoting *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988)).

When we review the sufficiency of a ballot title and popular name, we generally construe the two provisions together.[4] However, a popular name alone can render a proposed amendment ineligible for consideration at the election.[5] A popular name is a useful legislative device that serves to identify the proposal for discussion.[6] Similarly, a ballot title has the following mandatory requirements: (1) it must give the voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law; (2) it must be free of any misleading tendency, whether by amplification, omission, or fallacy; and (3) it cannot omit material information that would give the voters serious ground for reflection.[7] As a whole, these requirements relate directly to the ultimate issue, whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote.[8]

In this case, the popular name and ballot title are misleading and therefore insufficient as a matter of law.[9] This is so because neither the popular name nor the ballot title

---

[4]*Id.* at 822.

[5]*See, e.g., Ark. Women's Pol. Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984) (holding the popular name was misleading thus the proposed amendment was ineligible for consideration at the election regardless of the effects of the ballot title). *Id.,* 283 Ark. at 467, 677 S.W.2d at 848 ("[P]opular ballot names which contain catch phrases or slogans *that tend to mislead* or give partisan coloring to the merit of a proposal will be rejected . . . [T]he popular ballot name . . . *is misleading*") (internal citations omitted) (emphasis added).

[6]*Id.* at 821–22.

[7]*Armstrong*, 2022 Ark. 167, at 8, 652 S.W.3d at 174.

[8]*Id.* at 9.

contemplates revoking an already existing license that has been issued by the Arkansas Racing Commission. Indeed, both use future tense language indicating that the vote will affect action taken prospectively without revealing to voters that a vote in favor of the amendment will, in fact, repeal action that has already been taken prior to any votes being cast.

The popular name provides that this amendment would be "repealing authority *to issue* a casino license in Pope County, Arkansas." This language is clearly prospective as it seeks to take away authority that the Racing Commission currently possesses. There is nothing within the text of the popular name that would give voters notice that any license that was *issued* when the Racing Commission held this constitutionally provided authority, prior to the election, would be revoked. The majority concedes this fact finding that, "the popular name does not explicitly state that the Proposed Amendment will revoke an existing casino license for Pope County." Yet the majority attempts to give the Intervenors a free pass because the majority says, "the ballot title does." This is simply false.

The ballot title provides, "… that **if** the Arkansas Racing Commission, or other governing body, **issues** a casino license for a casino in **Pope County**, Arkansas prior to the effective date of this Amendment, **then** said license is revoked on the effective date of this Amendment; amending Amendment 100 § 4, to add subsection (t), **providing that if a future constitutional amendment authorizes the issuance of a casino license in any county other than those issued now** or hereafter for **Crittenden County** (to Southland Racing Corporation), **Garland County** (to Oaklawn Jockey Club, Inc.) and **Jefferson County** (to Downstream Development Authority of the Quapaw Tribe of

20

Oklahoma and later transferred to Saracen Development, LLC), then the quorum court of each county where a casino is to be located shall call a special election by ordinance to submit the question of whether to approve of a casino in the county;" Critically, not only does the ballot title not state that a license previously *issued* (past tense) in Pope County will be revoked, it explicitly states the only licenses issued now are in Crittenden, Garland, and Jefferson Counties. Therefore, a voter reading this proposed amendment has been led by the drafters of this proposal to believe that that only Crittenden, Garland, and Jefferson Counties have had casino licenses issued and that Pope County has not. This is false. Further, because the effective date of the amendment is after the election date, it lends to the impression of a voter that a vote in favor of the amendment will prevent or revoke actions taken after the election.

Compounding this issue is the fact that this language is couched within an "if-then" statement. While an "if-then" statement can refer to both past and future events, this is solely dependent upon how the statement is framed. The tense of the verb used is paramount in determining whether you're talking about past or future scenarios.

Here, the ballot title uses a future tense verb. "If the Arkansas Racing commission . . . *issues* a casino license . . . then said license is revoked." As a result, an Arkansas voter would not presume this ballot title would revoke a license that has already been **issued**. Again, the popular name likewise supports this conclusion because it also uses **"to issue"** language. Thus, voters are not able to reach an intelligent and informed decision either for or against the proposal, and thus, they are unable to understand the consequences of their

21

votes.[10]  This court must therefore enjoin the Secretary from canvassing or certifying any ballots cast for the proposed amendment.[11]

Finding to the contrary, the majority states "the ballot title informs the voter that if a casino license **has been issued**, it will be revoked by the proposed amendment."  Maj. Op. at 9, ¶ 2.  As fully explained above, that is simply not what the text in either the ballot title or the popular name says or means.  Instead, the majority has rewritten the language for the purpose of its analysis, changing the "**to issue**" language to "**has been issued**." This is no surprise, as it is the only vehicle through which the majority can find this proposed amendment does not mislead voters.  Words have meaning.  The text within the popular name and ballot title is supposed to say what it means and mean what it says.  By rewriting

---

[10]The majority also wants to give the drafters of the popular name and ballot title a free pass based on the timeline of the events here. ("In order to comply with the dissent's position, the drafters would have been placed in the impossible situation of predicting an uncertain future event").  Maj. Op. at 11, n. 3.  However, our role is merely to review the language contained in the popular name and ballot title that is placed before us to ensure that it does not mislead Arkansas voters.  Thus, the fact that doing our job properly leads to an unfortunate or unfair outcome has no bearing on whether the popular name and ballot title before us are misleading.

[11]*See, e.g.*, *Lange v. Martin*, 2016 Ark. 337, at 9, 500 S.W.3d 154, 160 (holding that the ballot title of the proposed amendment was insufficient because it failed to convey to the voter the scope and import of the proposed measure); *Kurrus v. Priest*, 342 Ark. 434, 445, 29 S.W.3d 669, 675 (2000) (holding "that the ballot title . . . along with its popular name, is insufficient. It is misleading, both by amplification and omission, and thwarts a fair understanding of the issues presented. It also fails to convey to the voter the scope and import of the proposed measure"); *Scott v. Priest*, 326 Ark. 328, 331, 932 S.W.2d 746, 747 (1996) (holding "the ballot title clearly prevented a fair understanding of the amendment and would give the voter 'serious grounds' for reflection on whether to vote for the measure").

the proposed amendment for the Intervenors, the majority has stripped the relevant text of its meaning. This is improper.[12]

The concurrence states that this court should not review the relevant text contained in the popular name and ballot title because it is not misleading. This is even though the language discussed above was specifically addressed by all parties in their briefing and by the majority because of the allegations that the language was misleading. Because it is the role of this court to ensure that voters are able to understand the consequences of their votes, the court has a duty to address the obviously misleading nature of the text contained in the popular name and ballot title of this proposed amendment.

In sum, the proper interpretation of this proposed amendment is that: (1) The Arkansas Racing Commission is being stripped of the authority "to issue" a casino license and (2) if the Commission issues a new casino license, then that license is revoked. What the popular name and ballot title do not contemplate is the revocation of an existing license, already issued by the Commission before the election, when it had the authority to do so. The disagreement in the interpretation of this language by the parties and this court only underscores the misleading nature of this popular name and ballot title. As a result, if the proposed amendment were presented to the people of Arkansas as written, they would not know the consequence of their votes, which makes the amendment misleading.

---

[12]*Roberts*, 341 Ark. at 824, 20 S.W.3d at 382 (there is "no authority whereby this court could rewrite or change the text of a proposed amendment"); *see also Bailey v. McCuen*, 318 Ark. 277, 289, 884 S.W.2d 938, 944 (1994) ("[I]t is not the duty of this court to draft ballot titles.").

Accordingly, the Secretary should be enjoined from canvassing or certifying any ballots cast for the proposed amendment at the November 5, 2024, general election.[13]

For these reasons, I respectfully dissent.

*David A. Couch*; *McDaniel Wolff, PLLC*, by: *Scott P. Richardson, Bart W. Calhoun*, and *Brittany D. Webb*; *Quattlebaum, Grooms & Tull PLLC*, by: *John E. Tull III, E.B. Chiles IV, R. Ryan Younger, Meredith M. Causey*, and *Glenn Larkin*, for petitioners.

*Tim Griffin*, Att'y Gen., by: *Jordan Broyles*, Sr. Ass't Att'y Gen., *Christine A. Cryer*, Sr. Ass't Att'y Gen., and *Justin Bracher*, Ass't Att'y Gen., for respondent.

*Friday, Eldredge & Clark, LLP*, by: *Elizabeth Robben Murray, Kimberly D. Young, Kristopher B. Knox*, and *Kathy McCarroll*, for intervenors.

---

[13] *See supra*, n. 11.