PAUL E. DANIELSON, Associate Justice 11 Petitioners Nancy Lee Wilson and Paula Jean Casey are residents and registered voters of the State of Arkansas and directors of Fairness for Arkansans, a ballot-question committee. Petitioners have filed an original action asking this court to declare the ballot title of a proposed constitutional amendment with the popular name “An Amendment to Limit Attorney Contingency Fees and Non-Economic Damages in Medical Lawsuits” insufficient and that the initiative petition containing the proposed amendment should be removed from the general election ballot, or in the alternative, that Respondent Secretary of State Mark Martin should be enjoined from canvassing or certifying any ballots cast for the amendment | ¡¡at the November 8, 2016 general election. The proposed amendment is sponsored by Intervenors Chase Dugger and Stephen Canon, acting individually and on behalf of Health Care Access for Arkansans. Our jurisdiction to determine this matter is pursuant to Amendment 7 of the Arkansas Constitution and Arkansas Supreme Court Rule 6-5(a) (2015). We grant the petition and enjoin Respondent from .counting or certifying any ballots cast for the amendment. The text of the proposed amendment is as follows: SECTION 1. Section 3 of Amendment 80 . to the Arkansas Constitution is amended to read as follows: § 3. Rules of pleading, practice, and procedure. (A) The Except as provided in subsection (B) of this section, the Supreme Court shall prescribe the rules of pleading, practice, and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as declared in this Constitution. (B)(1) The practice of contracting for or charging excessive contingency fees in the course of legal representation of any person or entity seeking damages in an action for medical injury against a health-care provider is hereby prohibited. (a) An excessive contingency fee is in excess of thirty-three and one-third percent (33 1/3%) recovered. (b) The above limitation shall apply regardless of whether the recovery is by settlement, arbitration, or judgment; the above limitation shall also apply regardless of the age or mental capacity of the person or entity for whom the recovery is made. (c) For purposes of subsection (B)(1)(a), “recovered” refers to the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and the attorney’s office-overhead costs or charges are not deductible disbursements or costs for such purpose. Ia(d) The terms “action for medical injury,” “health-care provider,” and ■ “medicab injury” are defined in this Amendment’s addition to Article 5, Section 32 of the state Constitution. (e) The prohibition of excessive medical-injury attorney fees described in this subsection does not extend to workers’ compensation cases. (B)(2) The General Assembly’s power to enact laws that prohibit excessive contingency fees includes the subsidiary power to enact laws which govern (a) how the total value or present value of a set of periodic payments should be calculated, (b) how or whether life expectancy or other relevant factors shall be taken into account with respect to those calculations, (c) to what extent the use of total value or present value calculations for such periodic payments shall be required when determining excessive contingency fees, and (d) the consequences and penalties for attorneys who contract for or charge excessive medical-injury contingency fees. (B)(3) The General Assembly shall have power to enforce, by appropriate legislation, the provisions of this section. (B)(4) A rule, of pleading, practice, and procedure enacted by law under subdivision (B)(1), (B)(2), or (B)(3) of this section shall supersede a conflicting rule of pleading, practice, and procedure prescribed by the Supreme Court. SECTION 2. Section 32 of Article 5 of the Arkansas Constitution is amended to read as follows: 32. Workmen’s- Compensation Laws— Actions for personal injuries. (a) The General Assembly shall have power to enact law as prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise, except as provided in subsection (b) of this section, no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted. (b)(1)(A) The General Assembly shall enact laws that specify the maximum dollar amount of non-economic damage awards in a civil action for medical injury brought against a health-care provider. (b)(1)(B) The maximum dollar amount of award of non-economic damages specified under subdivision (b)(1)(A) of this section shall be at least two hundred fifty thousand ^dollars ($250,000) per health-care provider against whom a judgment is rendered, regardless of whether the health-care provider is a health-care professional or a health-care business. (b)(2)(A) “Action for medical injury” means all actions, including actions for wrongful death, whether based in tort, contract, or otherwise, to recover damages on account of medical injury. (b)(2)(B) “Health-care provider” means either a “health-care professional” or a “health-care business.” (b)(2)(C) “Health-care professional” means an individual providing and billing for health-care services (including a physician, certified registered nurse anesthetist, physician’s assistant, nurse, optometrist, chiropractor, physical therapist, dentist, podiatrist, pharmacist, psychologist, or veterinarian) that is licensed by the state or otherwise lawfully providing professional health-care services. (b)(2)(D) “Health-care business” means an entity providing and billing for health-care services (including a hospital, nursing home, community mental health center, ambulatory surgical treatment, birthing center, intellectual dis- . ability institutional habilitation center, nonresidential substitution-based treatment center for opiate addiction, outpatient diagnostic center, recuperation center, rehabilitation facility, hospice, clinic, or home health-care agency) that is licensed by the state or otherwise lawfully providing health-care services; and including an owner, officer, employee, or agent of such a health-care business acting in the course and scope of employment in the providing of health care services. (b)(2)(E) “Medical injury’ means any adverse consequence or any set of adverse consequences arising out of or sustained in the course of the professional services being rendered by a health-care provider to a patient or resident, whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly' maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services. (b)(3)(A) The General Assembly may, for the purposes.of this section, further define "health-care professional” in law, so long as that definition includes the categories listed in section (b)(2)(C). (b)(3)(B) The General Assembly may, for the purposes of this section, further define “health-care business” in law, so long as that definition includes the categories listed in section (b)(2)(D). (b)(3)(C) The General Assembly may, for the purposes of this section, further define “medical injury” in law, so long as that definition includes the. categories listed in section (b)(2)(E). |g(b)(4)(A) By a majority vote of each house, the General Assembly shall enact laws in the 2017 Regular Session implementing subdivision (b)(1) of this section. (b)(4)(B) After enacting the laws as required by subdivision (b)(4)(A) of this section, the General Assembly may amend a law required by subdivision (b)(1) of this section by a two-thirds vote of each house. (b)(4)(C) In no event shall a law implementing subdivision (b)(4)(A) or (b)(4)(B) of this section violate subdivision (b)(1)(B) of this section. SECTION 3. This amendment does not supersede or amend the right of trial by jury as declared by the Arkansas Constitution. SECTION 4, In January of 2018 and every two years after January of 2018, the Supreme Court of Arkansas shall issue a rule which adjusts the maximum dollar amount of non-economic damage awards for inflation or deflation to the nearest multiple of one thousand dollars ($1,000). The biennial adjustment shall be based upon the Consumer Price Index or a comparable index chosen by the Court; when reasonably possible, the particular index the Court chooses shall remain the same over .time. The sole intent and effect of the biennial adjustment shall be to compensate for the effects of inflation or deflation with reasonable precision. SECTION 5. In the event that any section, subsection, subdivision, paragraph, subparagraph, item, sentence, clause, phrase or word of this amendment is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of this amendment, which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional was not originally a part of this amendment. SECTION 6. This amendment shall be effective on January 1, 2017. The proposed amendment’s popular name is as follows: An Amendment to Limit Attorney Contingency Fees and Non-Economic Damages in Medical Lawsuits The ballot title is as follows: An amendment to the Arkansas constitution providing that the practice of contracting for or charging excessive contingency fees in the course of legal representation of any person seeking damages in an action for medical injury against a health-care provider is hereby prohibited; providing that an excessive medical-injury contingency fee is greater than thirty-three and one-third percent (33 1/3%) of the amount recovered; providing that, for the purposes of calculating the amount recovered, the figure that | fishall be used is the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the medical-injury claim; providing that this limitation shall apply whether the recovery is by settlement, arbitration, or judgment; providing that this limitation shall apply regardless of the age or mental capacity of the plaintiff; providing that the prohibition of excessive medical-injury fees does not apply to workers’ compensation cases; providing that the General Assembly may enact legislation which enforces this prohibition, and that it may also enact legislation that determines the relative values of time payments or periodic payments and governs the consequences and penalties for attorneys who contract for or charge excessive medical-injury contingency fees; providing that the General Assembly shall enact a measure which specifies a maximum dollar amount for a non-economic damage award in any action for medical injury against a health-care provider, but that such a measure may never be smaller than two hundred and fifty thousand dollars ($250,000); providing that the General Assembly may, after such enactment, amend it by a vote of two-thirds of each house, but that no such amendment may reduce the maximum dollar amount for a non-economic damage award in any action for medical injury against any health-care provider to less than two hundred and fifty thousand dollars ($250,000); providing that the Supreme Court shall adjust this figure for inflation or deflation on a biennial basis; and providing that this amendment does not supersede or amend the right to trial by jury. On April 20, 2016, the Attorney General issued Opinion No. 2016-038, certifying the popular name, as modified, and ballot title of the proposed constitutional amendment. Thereafter, Intervenors collected sufficient signatures to place the proposed amendment on the ballot. On August 25, 2016, Respondent certified the proposed amendment to be placed on the ballot as Issue No. 4 for the November 8 general election. Petitioners filed this original action on August 29, 2016. Petitioners allege that the ballot title is insufficient because it (1) fails to convey an intelligible idea of the scope and impact of the proposed amendment, (2) is materially misleading to the voters, and (3) omits material information that is essential for a fair understanding of the amendment. We begin our analysis with a review of the law regarding the sufficiency of ballot titles. |7It has long been regarded as axiomatic that the majority of voters, when called upon to vote for or against a proposed measure, will derive their information about its contents from an inspection of the ballot title immediately before exercising the right of suffrage. Christian Civic Action Comm. v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). The ballot title must be an impartial summary of the proposed amendment, and it must give voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law. Cox v. Daniels, 374 Ark. 437, 288 S.W.3d 591 (2008) (citing May v. Daniels, 359 Ark. 100, 194 S.W.3d 771 (2004)). The ballot title must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issue presented. Id. It cannot omit material information that would give the voters serious ground for reflection. Id. It is required that the title be complete enough to convey an intelligible idea of the scope and import of the proposed law. Id. Thus, it must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. I'd. This court has long recognized the impossibility of preparing a ballot title that would suit everyone. Id. Thus, the ultimate issue is whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal ánd understands the consequences of his or her vote based on the ballot title. Id. The issue of the sufficiency of a ballot title is a matter of law to be decided by this court. Id. Thus, we will consider the fact .of Attorney General certification and attach some ^significance to it; however, we will not defer to the Attorney General’s certification or give it presumptive effect. Id. Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. Id. It is not our purpose to examine the relative merit or fault of the proposed changes,in the law; rather, our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. Id. In other words, “[t]he question is not how the members of this court feel concerning the wisdom of this proposed amendment, but rather whether the requirements for submission of the proposal to the voters have been met.” May, 359 Ark. at 107, 194 S.W.3d at 777 (quoting Ferstl v. McCuen, 296 Ark. 504, 509, 758 S.W.2d 398, 401 (1988)). Ultimately, Amendment 7 places the burden upon the party challenging the ballot title to prove that' it is misleading or insufficient. Cox, 374 Ark. 437, 288 S.W.3d 591. Petitioners assert that the ballot title at issue herq is insufficient because it fails to define “non-economic damages.” Section 2(b)(1)(A) of the amendment directs the General Assembly to enact laws “that specify the maximum dollar amount of non-economic damage awards in a civil action for medical injury brought against a health-care provider.” Section 2(b)(1)(B) of the amendment states as follows: The maximum dollar amount award of non-economic damages specified under subdivision (b)(1)(A) of this section shall be at least two hundred fifty thousand dollars ($250,000) per health-care provider against whom a judgment is rendered, regardless of whether the healthcare provider is a health-care professional or a health-care business. IflBoth the amendment and the ballot title fail to provide a definition of “non-economic damages.” Intervenors point to Cox v. Daniels, where we said that “most voters could readily understand the term ‘state lottery.’ ” Id.- at 447, 288 S.W.3d at 597 (quoting Christian Civic Action Comm., 318 Ark. at 248, 884 S.W.2d at 609). We also stated in Cox that a highly technical definition is disfavored in ballot titles. We have disapproved the use of terms that are technical and not readily understood- by voters, such that voters would be placed in a position of either having to be an expert in the subject or having to guess as to the effect his or her vote would have. Cox, 374 Ark. 437, 288 S.W.3d 591; see also Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669 (2000) (holding that a ballot title was insufficient because it did not sufficiently-inform the voter as to what constitutes a “tax increase”); Christian Civic Action Comm., 318 Ark. 241, 884 S.W.2d 605 (striking down a proposed measure because the ballot title was misleading in that it used a definition full of highly technical terms in order to avoid using the term “casino-style gambling”). The term “non-economic damages” is a “technical, term” that is -not readily understood by voters. Without a definition of this term, the voter would be in the position of guessing as to the effect his or her vote would have unless he or she is an expert in the legal field. In other words, the voter would be unable to reach an intelligent and informed decision for or against the proposal without an understanding of the terms and the consequences of his or her vote. See Cox, 374 Ark. 437, 288 S.W.3d 591. Accordingly, we conclude that the ballot title of the proposed amendment is insufficient because it fails to define the term “non-economic damages.” Therefore, we grant the petition to enjoin Respondent Secretary of State Mark|inMartin from counting or certifying any ballots' cast for the proposed amendment at the general election on November 8,2016. Having determined that the. ballot title is insufficient on the issue of the term “non-economic damages,” we need not address the remainder of the issues raised by Petitioners. See Bailey v. McCuen, 318 Ark. 277, 884 S.W.2d 938 (1994). To be clear, we are not expressing an opinion oil the merits of those issues. We further shorten the time for issuance of the mandate to five days and direct that any petition for rehearing be filed within five days from the date that this opinion is issued. Petition granted. Intervenors’ motion to dismiss is denied. Petitioners’ motion to strike Intervenors’ amended answer is moot. Brill, C.J., and Wood, J., concur.