Cite as 2024 Ark. 155

# SUPREME COURT OF ARKANSAS
**No.** CV-24-652

|  |  |
|---|---|
| | **Opinion Delivered:** October 21, 2024 |
| BILL PASCHALL, INDIVIDUALLY AND ON BEHALF OF ARKANSANS FOR PATIENT ACCESS, A BALLOT QUESTION COMMITTEE<br><br>PETITIONERS | AN ORIGINAL ACTION |
| V. | |
| JOHN THURSTON, IN HIS CAPACITY AS ARKANSAS SECRETARY OF STATE<br><br>RESPONDENT | |
| JIM BELL, INDIVIDUALLY AND ON BEHALF OF PROTECT ARKANSAS KIDS, A BALLOT QUESTION COMMITTEE<br><br>INTERVENORS | PETITIONERS' PETITION DENIED; RESPONDENT'S REQUEST FOR RELIEF DENIED; INTERVENORS' REQUEST FOR RELIEF GRANTED. |

**SHAWN A. WOMACK, Associate Justice**

Petitioners Bill Paschall and Arkansans for Patient Access (APA), a ballot-question committee, filed an original action asking this court to declare the ballot title of a proposed constitutional amendment with the popular name "Medical Marijuana Amendment of 2024" sufficient and have requested that votes cast for the proposed amendment be counted for the November 5, 2024, general election. The Petitioners sponsored the proposed amendment. For the reasons discussed herein, we disagree with the Petitioners and their request for relief is denied.

Both the Respondent Secretary of State John Thurston (Secretary) and the Intervenors, Jim Bell and Protect Arkansas Kids (PAK), a ballot question committee, have requested that we enjoin the canvassing or certifying of any ballots cast for the proposed amendment at the November 5, 2024, general election based on two separate theories of why the submitted proposal is insufficient as a matter of law. The Secretary argues that APA failed to meet the 90,704 minimum-signature requirement that is necessary to get the proposed amendment on the ballot. PAK argues that that the popular name and ballot title of this proposed amendment are misleading. For the reasons discussed *infra*, we disagree with the Respondent and agree with the Intervenors.

We hold that the proposed amendment is insufficient as a matter of law for the following reasons. First, the popular name indicates to voters that the proposed amendment only concerns marijuana for *medical* purposes, yet it seeks to legalize possession of up to an ounce of marijuana for *all* purposes if triggered by federal action. In the same vein, the popular name of the ballot title does not inform voters that they would be amending article 5, section 1 of the Arkansas Constitution—which is likewise wholly unrelated to medical marijuana. Finally, the ballot title does not adequately inform voters that it is stripping the General Assembly of its ability to amend Amendment 98. For these reasons, we hold that the proposed amendment is misleading. Accordingly, we grant the Intervenors' request for relief and order that the Secretary be enjoined from canvassing or certifying any ballots cast for the proposed amendment at the November 5, 2024, general election.

2

## I. *Facts and Procedural Background*

Paschall and APA filed this original action against John Thurston in his official capacity as Arkansas Secretary of State. This court has jurisdiction under amendment 7, as codified in article 5, section 1 of the Arkansas Constitution; section 2(D)(4) of amendment 80; and Arkansas Supreme Court Rule 6-5(a).

APA is a ballot question committee created to secure the passage of the Arkansas Medical Marijuana Amendment of 2024. APA submitted a petition on July 5, 2024, that was ultimately rejected by the Secretary on September 30, 2024.[1] Petitioners filed this original action the next day, October 1, 2024, requesting that this court vacate the Secretary's decision that the submission was insufficient and order that the amendment be placed on the November 2024 general election ballot. Later that day, Bell and PAK moved to intervene. PAK is a ballot question committee created to oppose the Arkansas Medical Marijuana Amendment of 2024. PAK claims the proposed amendment is insufficient, albeit for a separate reason from the one given by the Secretary.

---

[1]The Attorney General certified the proposed amendment on February 29, 2024. Because the Arkansas Constitution does not contemplate the Attorney General making any sufficiency determination with respect to a proposed amendment, his certification has no impact on our analysis. Indeed, the Arkansas Constitution provides that this court, not the Attorney General, makes the ultimate sufficiency determination. *See also*, *Crochet v. Priest*, 326 Ark. 338, 343, 931 S.W.2d 128, 130 (1996) ("[W]hile we consider the fact that the Attorney General certified this ballot title, we do not defer to the Attorney General's opinion or give it presumptive effect"). Put differently, whether the Attorney General certifies a proposed amendment has no bearing on our determination of whether the text contained in the proposed amendment is sufficient as a matter of law. While we *may* choose to consider the action of the Attorney General in such an instance, we are under no obligation to do so, and we must not merely defer to any such finding made by that executive branch office as doing so would be ceding a clearly defined judicial responsibility and thus violate the separation of powers.

3

The Secretary claims the basis for denial was APA's failure to comply with Arkansas Code Annotated section 7-9-601(b)(3) (Supp. 2023)—specifically, the failure to comply with the requirement that "the sponsor" certify that paid canvassers had no disqualifying offenses. Instead, at the direction of APA, individuals affiliated with Nationwide Ballot Initiative (NBA) signed and submitted the affidavits on APA's behalf. Accordingly, on September 30, the Secretary rejected all signatures obtained by paid canvassers that were accompanied by an affidavit submitted by NBA on APA's behalf. The Secretary claims this brought the required signatures for the proposed popular name and ballot title below the necessary threshold for certification, thus rendering the petition insufficient.[2]

PAK claims that the popular name and ballot title are insufficient because both are misleading. PAK claims this is so for any one of the following reasons: (1) the ballot title fails to inform the voter that the proposed amendment would repeal the General Assembly's authority to amend Amendment 98; (2) the popular name indicates that the proposed amendment applies only to "medical" marijuana when it instead allows marijuana use for nonmedical conditions; (3) the popular name and ballot title assure voters that the proposed amendment concerns marijuana for medical purposes only, but it would legalize possession

_____

[2]APA's July 5, 2024, petition submission contained over 111,000 signatures. The Secretary found that 77,000 of those signatures were valid. It then provided APA a cure period to gather the necessary signatures to meet the 90,704 minimum-signature requirement. APA then delivered an additional 38,934 signatures to the Secretary on August 30, 2024. On September 30, the Secretary validated 10,521 of those signatures, claiming that any signatures submitted in violation of Arkansas Code Annotated section 7-9-601(b)(3) would not be counted for any purpose. The Secretary also claimed that the initial 77,000 signatures were submitted in violation of Arkansas Code Annotated. section 7-9-601(b)(3), but they would nevertheless remain valid. Pursuant to this court's October 2, 2024, order, the Secretary confirmed that APA met the minimum threshold signature requirement if its interpretation of Arkansas Code Annotated section 7-9-601(b)(3) is incorrect.

4

of up to an ounce of marijuana for all purposes under Arkansas law if marijuana becomes legal under federal law; and (4) the popular name fails to disclose that the proposed amendment would neutralize constitutional text that allows the General Assembly to amend or repeal initiated constitutional amendments by a two-thirds vote of both houses. The issues raised here are entirely a matter of law and this case can be decided without the appointment of a special master.

Because Arkansas Code Annotated sections 7-9-101(10) (Supp. 2023) and 7-9-402(11)(A) (Repl. 2018) allowed NBA to submit the sponsor statements on APA's behalf, the Secretary erred in finding the proposed amendment insufficient for APA's failure to meet the 90,704 minimum-signature requirement. Nevertheless, because the popular name and ballot title of the proposed amendment are misleading, the Secretary is enjoined from canvassing or certifying any ballots cast for the proposed amendment at the November 5, 2024, general election.

## II. *Discussion*

### A. "The Sponsor" Requirement

The Secretary argues that APA's signatures are insufficient because "the sponsor" did not sign the certification that the paid canvassers had no disqualifying offenses. Instead, at the direction of APA, individuals affiliated with NBA signed the certifications. The Secretary contends that these individuals could not sign the certification because "the sponsor" must be the one who signs it, and they were not "the sponsor." *See* Ark. Code Ann. § 7-9-601(b)(3).

5

Arkansas law requires that "[u]pon submission of the sponsor's list of paid canvassers to the Secretary of State, the sponsor shall certify to the Secretary of State that each paid canvasser in the sponsor's employ has no disqualifying offenses in accordance with this section." *Id*. The Secretary argues that "*the* sponsor" means only the ballot initiative committee (including its members), and APA could not delegate this responsibility to someone whom it has hired to lead the canvassing effort.

While *the* is a definite article, which suggests there can be only one sponsor—seemingly the ballot initiative committee, the Secretary ignores the subchapter's definition of sponsor. As used in the subchapter, "'[s]ponor' means a person who arranges for the circulation of an initiative or referendum petition or who files an initiative or referendum petition with the official charged with verifying the signatures." Ark. Code Ann. § 7-9-101(10). "Person" is defined as "any individual, business, proprietorship, firm, partnership, joint venture, syndicate, business trust, labor organization, company, corporation, association, committee, or any other organization or group of persons acting in concert." Ark. Code Ann. § 7-9-402(11)(A).

Given these definitions, a wide range of groups or people can qualify as "the sponsor." Here, APA contracted with NBA to gather signatures in support of the ballot initiative and together, these groups acted in concert to arrange for the circulation of an initiative petition and file the petition with the Secretary of State. *Id*.; Ark. Code Ann. § 7-9-101(10). Therefore, under the statutory definition of sponsor, and based on our recent opinion in *McGill v. Thurston*, 2024 Ark. 146 at 8-9, the individuals affiliated with NBA were eligible to sign the certification that the paid canvassers did not have any disqualifying

6

offenses.  Accordingly, the Secretary erred in finding the Medical Marijuana Amendment of 2024 insufficient for APA's failure to meet the 90,704 minimum-signature requirement.[3]

## B. The Sufficiency of the Popular Name and Ballot Title

This court decides the sufficiency of a  popular name and ballot title as a matter of law.[4]  When reviewing the sufficiency of a proposed popular name and ballot title, this court's role is "to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly."[5]  If presented as written, the Medical Marijuana Amendment of 2024 would not be fair to the people of Arkansas because it is plainly misleading.

As more fully explained below, the popular name of the proposed amendment, "Arkansas *Medical Marijuana* Amendment of 2024" is misleading because it fails to provide an accurate representation of the contents of the amendment and because it includes misleading and deceptive language.  Given the popular name, one would reasonably presume that the contents of the related ballot title would be limited to the regulation of medical marijuana, yet this is not so.  Instead, contained within the almost 900 words of the proposed amendment, APA seeks to regulate marijuana unrelated to medical use.  Stated

---

[3]By choosing to issue the dissent purely as a dissenting opinion, rather than as a concurring in part and dissenting in part opinion, the dissent is presumably voting to overturn the holding in *McGill* on this issue, which was a 7–0 opinion that was handed down just days ago.

[4]*See, e.g.*, *Kurrus v. Priest*, 342 Ark. 434, 440-41, 29 S.W.3d 669, 672 (2000); *see also* *May v. Daniels*, 359 Ark. 100, 194 S.W.3d 771 (2004); Ark. Const. art. 5, § 1.

[5]*Roberts v. Priest*, 341 Ark. 813, 818, 20 S.W.3d 376, 379 (2000) (quoting *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988)).

differently, the proposed amendment would conditionally legalize *recreational* marijuana possession in Arkansas pursuant to a trigger mechanism contingent upon federal action.

Additionally, the proposed amendment seeks to amend article 5, section 1 of the Arkansas Constitution such that any amendment to the Arkansas Constitution (not just Amendment 98 or other amendments related to marijuana, medical or otherwise) cannot be repealed or amended without a subsequent public vote unless each individual amendment has specific language that would allow for such subsequent amendments. A voter casting a vote on an amendment with a popular name of the "Medical Marijuana Amendment of 2024" will not reasonably be put on notice that they are voting on something wholly unrelated to medical marijuana, such as amending the law regarding elections and the process to amend other constitutional amendments governing any topic. Finally, the ballot title does not adequately inform voters that it is stripping the General Assembly of the ability to amend Amendment 98. For these reasons, we hold that the language of the proposed amendment is misleading.

### i. *Standard of Review*[6]

---

[6] This court has found popular names and ballot titles misleading and struck their related proposed amendments from the ballot time and again for nearly one hundred years. *See, e.g.*, *Wilson v. Martin*, 2016 Ark. 334, 500 S.W.3d 160 (holding ballot title was insufficient for failing to define the term "non-economic damages"); *Lange v. Martin*, 2016 Ark. 337, at 9, 500 S.W.3d 154, 160 (holding that the ballot title of the proposed amendment was insufficient because it failed to convey to the voter the scope and import of the proposed measure); *Kurrus*, 342 Ark. 434, 445, 29 S.W.3d 669, 675 (2000) (holding "that the ballot title of proposed amendment 4, considered along with its popular name, is insufficient. It is misleading, both by amplification and omission, and thwarts a fair understanding of the issues presented. It also fails to convey to the voter the scope and import of the proposed measure"); *Scott v. Priest*, 326 Ark. 328, 331, 932 S.W.2d 746 (1996) (holding "the ballot title clearly prevented "a fair understanding of the amendment and would give the voter 'serious ground' for reflection' on whether to vote for the measure");

This court has liberally construed amendment 7, now codified as article 5, section 1, when determining the sufficiency of a popular name and ballot title.[7] But to be clear, we have qualified that liberal construction by recognizing that, "our adoption of that approach, however, does not imply that liberality is boundless or that common sense is disregarded."[8] While liberal construction of text is a looser and more forgiving standard generally, it cannot be so loose and forgiving as to completely overlook or disregard otherwise fatal flaws of noncompliance.

---

*Parker v. Priest*, 326 Ark. 386, 392, 931 S.W.2d 108, 111 (1996) (same); *Page v. McCuen*, 318 Ark. 342, 347, 884 S.W.2d 951, 954 (1994) (holding omissions from ballot title of significant provisions of amendment failed to give voters accurate description of proposal sufficient to allow them to vote intelligently); *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994) (holding that the omission of language in two instances to an already lengthy ballot title rendered the ballot title misleading); *Christian Civic Action Committee v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994) (holding that ballot title did not adequately inform voter to allow him or her to make intelligent choice for or against proposed constitutional amendment); *Ark. Women's Pol. Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984) (holding the popular name was misleading thus the proposed amendment was ineligible for consideration at the election regardless of the effects of the ballot title); *Dust v. Riviere*, 277 Ark. 1, 6 , 638 S.W.2d 663, 666 (1982) (holding "proposed ballot title [was] so complex, detailed, lengthy, misleading and confusing that [state] voter could not intelligently make a choice based on such title"); *Moore v. Hall*, 229 Ark. 411, 316 S.W.2d 207 (1958) (holding both popular name and ballot title were misleading and therefore insufficient as a matter of law); *Johnson v. Hall*, 229 Ark. 400, 401, 316 S.W.2d 194, 195 (1958) ("The ballot title of the petition is defective and insufficient in that it does not convey a complete and intelligent idea of the scope and import of the proposed amendment."); *Hoban v. Hall*, 229 Ark. 416, 418, 316 S.W.2d 185, 186 (1958) (holding "ballot title fails to supply the voter with the information that the constitution expects him to have" and is thus insufficient); *Bradley v. Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952) (same); *Walton v. McDonald*, 192 Ark. 1155, 1157, 97 S.W.2d 81, 83 (1936) (same).

[7]*Christian Civic Action Comm.*, 318 Ark. 241, 246, 884 S.W.2d 605, 608 (1994).

[8]*Id.*

When we review the sufficiency of a ballot title and popular name, we generally construe the two provisions together.[9] However, a popular name alone can render a proposed amendment ineligible for consideration at the election.[10] A popular name is a useful legislative device, and its purpose is to identify the proposal for discussion.[11] A popular name must not contain language that is misleading.[12] Similarly, a ballot title requires the following: (1) it must give the voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law; (2) it must be free of any misleading tendency whether by amplification, omission, or fallacy; and (3) it cannot omit material information that would give the voters serious ground for reflection.[13] The burden of proof is on the party challenging the ballot title to prove that it is misleading or insufficient.[14] As a whole, these requirements are directly related to the ultimate issue, whether the voter, while inside the voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote.[15]

---

[9]*Id.*

[10]*See, e.g.*, *Ark. Women's Pol. Caucus*, 283 Ark. 463, 677 S.W.2d 846 (1984) (holding the popular name was misleading thus the proposed amendment was ineligible for consideration at the election regardless of the effects of the ballot title).

[11]*Kurrus*, 342 Ark. 434, 440–41, 29 S.W.3d 669.

[12]*Id.*

[13]*May*, 359 Ark. 100, 106–07, 194 S.W.3d 771, 777.

[14]*Id.*

[15]*Id.*

## ii. *The Popular Name "Arkansas Medical Marijuana Amendment of 2024"is Misleading*

Below is the proposed popular name and ballot title submitted by APA and certified by the Attorney General.

<u>Popular Name</u>

Arkansas Medical Marijuana Amendment of 2024

<u>Ballot Title</u>

This amendment to the Arkansas Constitution expands access to medical marijuana by qualified patients under the Arkansas Medical Marijuana Amendment of 2016, Amendment 98 and ratifies and affirms that amendment as originally adopted and as amended by any legislative act, except as specified; amending Amendment 98, § 2(4)(B) to define "cultivation facility" as including sale and delivery of usable marijuana to a processor; amending Amendment 98, § 2(12) to replace the definition of "physician" with "health care practitioner," which includes medical and osteopathic doctors, nurse practitioners, physicians' assistants, and pharmacists and to remove requirements for federal controlled-substances registration; amending Amendment 98, §§ 4(f), 5(a)(I), 5(E)(1), 501), and 15 to replace references to physicians, with references to health care practitioners; amending Amendment 98, § 2(13)(C) to add language to the definition of "qualifying medical condition" to include any condition not otherwise specified in Amendment 98 that a health care practitioner considers debilitating to a patient that might be alleviated by the use of usable marijuana; amending Amendment 98, § 2(14)(A) to allow non-Arkansas residents to apply for and receive registry identification cards in the same way as Arkansas residents; amending Amendment 98, § 2(17) to define "usable marijuana" as cannabis and other substances including all parts of the plant Cannabis sativa, whether growing or not, including any seeds, resin, compound, manufacture, salt, derivative, mixture, isomer or preparation of the plant, including tetrahydrocarmabinol and all other cannabinol derivatives, and to exclude hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis; amending Amendment 98, § 2(19) to remove language requiring a physician-patient relationship from the definition of "written certification" and to allow assessments in person or by telemedicine; amending Amendment 98, § 3(e) to allow licensed dispensaries to receive, transfer, or sell marijuana seedlings, plants, or usable marijuana to and from Arkansas-licensed cultivation facilities, processors, or other dispensaries, to accept marijuana seeds, seedlings, or clones from any individual or entity authorized by law to possess them, and to sell usable marijuana, marijuana seedlings, plants or seeds

to qualifying patients and designated caregivers; amending Amendment 98, § 3(h) to remove language allowing professional licensing boards to sanction a physician for improper evaluation of a patient's medical condition or for violating the standard of care; amending Amendment 98, § 3(1) to remove authorization for Department of Health rules concerning visiting qualifying patients obtaining marijuana from a dispensary; amending Amendment 98, § 4(a)(4)(A) to require criminal background checks for all applicants seeking to serve as designated caregivers, with the exception of parents or guardians of minors who are qualifying patients applying to serve as designated caregivers for those minors; amending Amendment 98, § 5(a)(2) to remove language requiring reasonable registry identification card application fees or renewal fees; amending Amendment 98, § 5(d) to extend the expiration date of registry identification cards from one to three years and to add two additional years to the expiration date of existing cards; amending Amendment 98, § 8(e)(8) to remove and replace advertising restrictions with restrictions for dispensaries, processors, and cultivation facilities narrowly tailored to prevent advertising and packaging from appealing to children and to require the Alcoholic Beverage Control to make rules that require packaging that cannot be opened by a child or that prevents ready access to toxic or harmful amounts of the product; amending Amendment 98, § 8(m)(1)(A) to remove prohibitions on dispensary-provided paraphernalia requiring combustion of marijuana amending Amendment 98, § 8(m)(4)(A)(ii) to allow cultivation facilities to sell marijuana in any form to dispensaries, processors, or other cultivation facilities; amending Amendment 98, § 16 to replace its current language with a waiver of state sovereign immunity so that a licensed person or entity may seek injunctive relief in the event the state fails to follow Amendment 98; amending Amendment 98, § 21 to remove a prohibition on the growing of marijuana by qualifying patients and designated caregivers and to allow such growing under Amendment 98; repealing Amendment 98, §§ 23 and 26 in their entirety; amending Amendment 98 to allow qualifying patients or caregivers at least 21 years old and in possession of a valid registry identification card to possess, plant, dry, and process marijuana plants in limited quantities and sizes at their domicile solely for the personal use of the qualifying patient, to prohibit sale, bartering, and trade of such marijuana plants, and to provide for regulation of such activities by the Alcoholic Beverage Control Division; amending Amendment 98 to allow possession by adults of up to one ounce of usable marijuana, to allow sale of marijuana by licensed cultivation facilities and dispensaries for adult use if current federal law prohibiting such activities changes, and to provide for the regulation of the wholesale and retail of marijuana by licensed cultivation facilities and dispensaries by the Alcoholic Beverage Control Division; amending Arkansas Constitution, Article 5, § 1, to provide that unless provided in such constitutional amendment, no constitutional amendment shall be amended or repealed unless approved by the people under the Constitution; providing that this amendment's

provisions are severable, nullifying any provision of state law in conflict with this amendment; and providing that the amendment is self--executing.

a. Decriminalization of Possession of Marijuana for *Any* Purpose

The proposed amendment in this case would permit adults to possess up to one ounce of marijuana for *any* purpose if marijuana is declassified or decriminalized at the federal level. Indeed, the purpose of section 5 of the proposed amendment is clear: Federal legalization of marijuana triggers state legalization. The sole limitations will be (i) possession by adults and (ii) possession of not more than one ounce. One need not be a "qualifying patient," and one need not have a "qualifying medical condition." Possession and use of one ounce of marijuana would be legal for all purposes. This would allow dispensaries and cultivation facilities licensed under amendment 98 to sell marijuana for both medical and nonmedical use, governed by new rules enacted by the Alcoholic Beverage Control Division.[16]

In reaching the conclusion that the proposed amendment is misleading, *Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000), and *Crochet v. Priest*, 326 Ark. 338, 931 S.W.2d 128 (1996), are instructive. In *Roberts*, this court found the popular name misleading because it misrepresented the reach of the amendment because the popular name was limited to sales taxes, but it applied to all taxes.[17] The same is true here because the popular name indicates that the proposed amendment is limited to medical marijuana, but the reach of section 5 is

---

[16]The section is structured as a trigger law, activated by federal actions, similar to the Arkansas Human Life Protection Act (2019 Ark. Acts 180, § 2), which became effective after the U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

[17]*Roberts*, 341 Ark. at 822–23, 20 S.W.3d at 381.

13

broader, triggered by federal action it could result in legalization for all purposes, including recreational, with no medical condition necessary.

In addition, this court in *Crochet* found that the phrase "video terminal games" as used in the popular name and ballot title was misleading because it did not invoke gambling, which is what the proposed amendment was about.[18]  Similarly, "medical marijuana" does not invoke in the voters' minds the widespread possession and use of marijuana for *any and all* purposes.  This, alone, is enough to render the proposed amendment insufficient.  *See, e.g.*, *Ark. Women's Pol. Caucus*, 283 Ark. 463, 677 S.W.2d 846 (holding the popular name was misleading thus the proposed amendment was ineligible for consideration at the election regardless of the effects of the ballot title).[19]

_____

[18]*Crochet*, 326 Ark. at 346–48, 931 S.W.2d at 132–33.

[19]The dissent claims that it cannot join the majority because it, "disregards this court's decades–long legal precedent as it relates to the sufficiency of popular names and ballot titles." Diss. Op. at 1, ¶ 1.  This is perplexing.

To be clear, the majority is not creating a new standard of review.  To the contrary, we are applying decades old legal precedent.  *See, e.g., Arkansas Women's Pol. Caucus v. Riviere*, 283 Ark. 463, 468–69, 677 S.W.2d 846, 849 (1984) ("[T]he ballot name . . . standing alone, would tend to mislead . . . voters . . . [t]he ballot name contains only . . inviting catch words . . .  which gives the voters only the impression the proponents of the amendment want them to have. . . [i]t is plainly our duty to declare it misleading"). The dissent does not claim that *Arkansas Women's Pol. Caucus* has ever been overruled (because it hasn't) but instead it claims the majority misinterprets the holding of this case. Diss. Op. at 9-10.  The text directly above speaks for itself; thus, we are hard pressed to understand how we misinterpret the holding in this case. The dissent leans heavily on the "partisan coloring" language used by the court in that case, but it should be noted that it was not a reference to partisan as in political parties but rather partisan as in partial, biased, or distorted in favor of one side or point of view to the point of being misleading.  *See also May*, 359 Ark. 100, 104, 194 S.W.3d 771, 775–76 (2004) (Acknowledging that a popular name alone can render a proposed amendment insufficient but rejecting petitioners' argument on the sufficiency of the popular name); *Moore*, 229 Ark. 411, 413, 316 S.W.2d 207, 208 (1958) ("the popular name especially is invalid because it is calculated and intended to give exactly

14

In sum, the popular name "Arkansas *Medical* Marijuana Amendment of 2024" falsely suggests that the amendment is only about medical marijuana when, in reality, it is about much more. Just as the word *sales* in the popular name in *Roberts* incorrectly suggested to voters that the amendment was limited to one issue (sales taxes as opposed to all taxes), so, too, the word *medical* incorrectly suggests to voters that the proposed amendment is limited to medical marijuana. It is not.[20] The language used is deceptive and misleading and renders the proposal insufficient.

b. Amending Article 5, Section 1 of the Constitution

Similarly, a "Medical Marijuana Amendment" does not invoke in the voters' minds rewriting article 5, section 1 of the Arkansas Constitution. Yet that is precisely what APA seeks to do here. As currently written, the General Assembly, upon two-thirds vote of both houses, may amend or repeal any "measure approved by a vote of the people."[21] According to the Intervenors, in the next to the last sentence of the almost 900-word ballot title, APA seeks to strip the General Assembly of this authority. The ballot title provides for "amending Arkansas Constitution, Article 5, § 1, to provide that unless provided in such constitutional amendment, no constitutional amendment shall be amended or repealed unless approved by the people." The parties argue about whether a "measure" includes constitutional

---

the opposite impression of the contents of the proposed amendment from the true contents thereof").

[20]Other misleading tendencies and omissions could be illustrated with respect to the popular name, but the examples given suffice to demonstrate that the popular name is misleading and therefore insufficient.

[21]Ark. Const. art. 5, § 1.

15

amendments and thus the effect of this provision. However, the overarching issue here isn't what the outcome of this provision is, but rather the fact that a plain reading of this specious popular name (no matter how liberally it is construed) does not encompass amending article 5, section 1 of the constitution, which makes the popular name plainly misleading. As discussed directly above, *Roberts* and *Crochet* are dispositive on this issue and this form of deception will not stand.

c. The Ballot Title is Misleading

Not only is the popular name misleading, but the ballot title is likewise misleading. The ballot title misleads voters because it omits language stating that the proposed amendment would repeal the General Assembly's authority to amend Amendment 98 (i.e., omits material information). The proposed amendment alters or amends Amendment 98 in at least twenty different ways. In every instance, when citing the section of Amendment 98 that is affected, it describes either what that section is or how it would be changed, with one notable exception; it states that it is "repealing Amendment 98, §§ 23 and 26 in their entirety[.]" Specifically, section 23 provides the General Assembly with the power to pass laws amending certain sections of Amendment 98. In this proposal, the sponsors chose to describe nearly every change they were making to Amendment 98, but did not disclose that they were stripping power away from the elected representatives of the people in the General Assembly. We hold that this provision renders the ballot title misleading.

The standards required of a ballot title are clear. A ballot title (1) must give the voters a fair understanding of the issues presented and the scope and significance of the proposed changes in the law; (2) must be free of any misleading tendency whether by amplification,

16

omission, or fallacy; and (3) cannot omit material information that would give the voters serious ground for reflection.[22]

Here, this proposed provision of the ballot title fails to meet these *mandatory* requirements. Indeed, rather than providing Arkansas voters with a fair understanding of the significance of this proposed change, the sponsors have made a calculated omission of material information (the contents of section 23 of Amendment 98). This decision doomed the proposed ballot title, and it is plainly misleading.[23] While it is true that "through publication and public discussion of this and other initiated acts" voters may "acquire full information concerning their provisions, the law contemplates that all electors shall have certain information before them at the very time they exercise their right of suffrage, and this the ballot title . . . fails to furnish."[24] For these reasons, the ballot title is misleading.[25]

Finally, while the dissent waxes eloquently about kings and tyrants and a litany of certain constitutional rights that, while wholly unrelated to this case, we all hold dear, it totally misses the mark by implying that this opinion is somehow limiting the rights of the people to have a voice. To the contrary, this opinion is ensuring that the rule of law is

---

[22]*See supra*, n.11.

[23]It must also be noted that the length and calculated organization of the ballot title complicates these insufficiencies. *See, e.g.*, *Page*, 318 Ark. at 347, 884 S.W.2d at 954 (holding that the proposed amendment was so expansive that it precluded the writing of an acceptable ballot).

[24]*Walton*, 192 Ark. at 1159, 97 S.W.2d 81, 83 (1936).

[25]Other misleading tendencies and omissions could be illustrated with respect to the ballot title, but this example suffices to demonstrate that the ballot title is misleading and therefore insufficient.

17

upheld by enforcing the legal requirements adopted by the people themselves in various provisions of our state constitution and the statutes passed by the elected representatives of the people in the General Assembly and by ensuring that the sponsors of proposed amendments follow the law by submitting proposals to voters that are not deceptive or misleading.

### III. *Conclusion*

Article 5, section 1 of the Arkansas Constitution grants the people of Arkansas the vital right to propose and adopt amendments to their constitution. To ensure that the will of the people is respected and implemented, proposed amendments must be clear—not misleading. In this case, the Intervenors have met their burden of showing that the proposed amendment's popular name and ballot title are misleading and therefore insufficient to satisfy the requirements of amendment 7, as codified in article 5, section 1 of the Arkansas Constitution. The Secretary is thus enjoined from canvassing or certifying any ballots cast for the proposed amendment at the November 5, 2024, general election.

Petitioners' petition denied; Respondent's request for relief denied; Intervenors' request for relief granted.

Mandate to issue immediately.

Special Justices DON CURDIE and BILENDA HARRIS-RITTER join.

BAKER, WOOD, and HILAND, JJ., dissent.

KEMP, C.J., and HUDSON, J., not participating.

18

**Cᴏᴅʏ Hɪʟᴀɴᴅ, Justice, dissenting.**  Because the majority disregards this court's

decades-long legal precedent as it relates to the sufficiency of popular names and ballot titles,

I respectfully dissent.[1]

I. *Standard of Review*

Long ago, this court established definitive standards for evaluating the sufficiency of

popular names and ballot titles. [2]  This court has not deviated from those standards until

[1]The majority purports to call into question my disposition in this case as a dissenting opinion versus one that concurs in part and dissents in part.  The reason I will not concur in part is because of this court's concrete prohibition on the issuance of advisory opinions. *Sagely v. Hutchinson*, 2024 Ark. 37, at 11, 685 S.W.3d 238, 245; *Burnett v. State*, 2023 Ark. 162, at 3, 677 S.W.3d 191, 193; *Bentonville Sch. Dist. v. Sitton*, 2022 Ark. 80, at 5, 643 S.W.3d 763, 768; *Mahadevan v. Board of Tr. of Univ. of Ark. Sys.*, 2021 Ark. 208, at 2–3, 633 S.W.3d 756, 757; *Arkansas State Plant Bd. v. McCarty*, 2019 Ark. 214, at 5, 576 S.W.3d 473, 475; *Trujillo v. State*, 2016 Ark. 49, at 3, 483 S.W.3d 801, 803.  The majority kicks Issue No. 3 from the ballot based on its flawed reasoning regarding popular names and ballot titles.  Their analysis should have started and stopped there.  The fact that the majority would find that the present sponsor-agent issue did not run afoul of our recent legal precedent in *McGill v. Thurston*, 2024. Ark. 146, ___ S.W.3d ___ is completely advisory.  Though we agree with this court's 7-0 decision in *McGill*, here, there was no reason for the majority, nor this dissent, to address it.  Therefore, I dissent as to the only aspect of this present case where our case law and the judicial principle of justiciability will lawfully allow me to do so.

[2]The following cases are *a portion* of our well-developed jurisprudence outlining our standards regarding popular names and ballots titles:  *Westbrook v. McDonald*¸184 Ark. 740, 43 S.W.2d 356 (1931); *Shepard v. McDonald*, 189 Ark. 29, 70 S.W.2d 566 (1934); *Walton v. McDonald*, 192 Ark. 1155, 97 S.W.2d 81 (1936); *Hogan v. Hall*, 198 Ark. 681, 130 S.W.2d 716 (1939); *Sturdy v. Hall*, 204 Ark. 785, 164 S.W.2d 884 (1942); *Pafford v. Hall*, 217 Ark. 734, 233 S.W.2d 72 (1950); *Bradley v. Hall*, 220 Ark. 95, 251 S.W.2d 470 (1952); *Washburn v. Hall*, 225 Ark. 868, 286 S.W.2d 494 (1956); *Johnson v. Hall*, 229 Ark. 404, 316 S.W.2d 197 (1958); *Hope v. Hall*, 229 Ark. 407, 316 S.W.2d 199 (1958); *Leigh v. Hall*, 232 Ark. 558, 339 S.W.2d 104 (1960); *McDonald v. Bryant*, 238 Ark. 338, 381 S.W.2d 736 (1964); *Mason v. Jernigan*, 260 Ark. 385, 540 S.W.2d 851 (1976); *Becker v. Riviere*, 270 Ark. 219, 604 S.W.2d 555 (1980); *Dust v. Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982); *Arkansas Women's Pol. Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984); *Jackson v. Clark*, 288 Ark. 192, 703 S.W.2d 454 (1986); *Gaines v. McCuen*, 296 Ark. 513, 758 S.W.2d 403 (1988); *Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992); *Bailey v. McCuen*, 318 Ark. 277,

today.  The majority expands our jurisprudence by supplementing the existing standard for popular names by weaving in a new scope requirement.[3]

## A.  Popular Names

The purpose of a popular name is "to identify the proposal for discussion prior to the election."[4]  Popular names are "primarily a useful legislative device that *need not contain the same detailed information or include exceptions that might be required of a ballot title*."[5]  Our requirements for popular names are straightforward, they:  (1) must not be misleading; (2)

884 S.W.2d 938 (1994); *Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994); *Parker v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996); *Parker v. Priest*, 326 Ark. 386, 931 S.W.2d 108 (1996); *Stilley v. Priest*, 341 Ark. 329, 16 S.W.3d 251 (2000); *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000); *Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002); *May v. Daniels*, 359 Ark. 100, 194 S.W.3d 771 (2004); *Kinchen v. Wilkins*, 367 Ark. 71, 238 S.W.3d 94 (2006); *Cox v. Daniels*, 374 Ark. 437, 288 S.W.3d 591 (2008); *Cox v. Martin*, 2012 Ark 352, 423 S.W.3d 75; *Richardson v. Martin*, 2014 Ark. 429, 444 S.W.3d 855; *Lange v. Martin*, 2016 Ark. 337, 500 S.W.3d 154; *Rose v. Martin*, 2016 Ark. 339, 500 S.W.3d 148; *Wilson v. Martin*, 2016 Ark. 334, 500 S.W.3d 160; *Stiritz v. Martin*, 2018 Ark. 281, 556 S.W.3d 523; *Knight v. Martin*, 2018 Ark. 280, 556 S.W.3d 501; *Armstrong v. Thurston*, 2022 Ark. 167, 652 S.W.3d 167; *Mitchell v. Norris*, 2024 Ark. 148, ___ S.W.3d ___; *McGill v. Thurston*, 2024 Ark. 149, ___ S.W.3d ___.

[3]The majority suggests allowing the Attorney General's certification *any* weight would subvert the Arkansas Constitution.  However, the Attorney General, via the General Assembly, has the statutory authority to approve and certify, substitute and certify, or reject altogether all popular names and ballot titles.  Ark. Code Ann. § 7-9-107(d)(1) and (e) (Supp. 2023); *see also Reynolds v. Thurston*, 2024 Ark. 97, at 2, 689 S.W.3d 48, 50.  This court said, "[w]e will consider the fact of Attorney General certification and attach some significance to it."  *Bailey v. McCuen*, 318 Ark. at 284, 884 S.W.3d at 942.  Here, the Attorney General clearly reviewed APA's popular name and ballot title and found no issues with either.

[4]*Stiritz*, 2018 Ark. 281, at 3, 556 S.W.3d at 527 (quoting *May*, 359 Ark. at 104, 194 S.W.3d at 776; *Knight*, 2018 Ark. 280, at 5, 556 S.W.3d at 506 ("[t]he popular name must only reflect a measure in a way that is 'concise enough, and clear enough, for the voters to refer to and identify it easily.'") (quoting *Gaines*, 296 Ark. at 517, 758 S.W.2d at 405).

[5]*Stiritz*, 2018 Ark. 281, at 3, 556 S.W.3d at 527 (emphasis added).

20

must not contain catchphrases or slogans that mislead nor give partisan coloring; and (3) must instead be intelligible, honest, and impartial.[6] Popular names are not held to the same stringent standards as ballot titles.[7] When analyzing a popular name, we must consider it along with the accompanying ballot title to determine its sufficiency.[8]

Here, the majority states that the popular name of the proposed amendment is misleading because it fails to provide an accurate representation of the contents of the amendment and because it includes misleading and deceptive language. Further, it states that a voter would "presume that the contents of the *related* ballot title would be limited to the regulation of medical marijuana[,]" and that the voter would not "reasonably be put on notice that they are voting on something *wholly unrelated* to medical marijuana . . . ." The majority uses terms such as "reach," "related," and "wholly unrelated" to justify its reasoning. However, this is another way of saying that the popular name must be germane to every provision of the ballot title and/or amendment text and vice versa. The germane nature of a popular name as it relates to its resulting ballot title and/or amendment text has never before been a part of this court's analysis.

Furthermore, I believe the majority's understanding of the holding in *Arkansas Women's Political Caucus v. Riviere* is incorrect.[9] The majority attempts to bolster its

---

[6]*Id.* at 3, 556 S.W.3d at 527.

[7]*Id.* at 3, 556 S.W.3d at 527; *Arkansas Women's Pol. Caucus*, 283 Ark. at 467, 677 S.W.3d at 848.

[8]*May*, 359 Ark. at 105, 194 S.W.3d at 776; *Knight*, 2018 Ark. 280, at 5, 556 S.W.3d at 505–06.

[9]283 Ark. 463, 677 S.W.2d 846 (1984).

21

argument by asserting that the popular name in *Arkansas Women's Political Caucus* was held insufficient because it was *generally misleading* on its own.

However, in actuality, *Arkansas Women's Political Caucus* is an unequivocal example, not of a generally misleading popular name, but of an *insufficient* popular name due to its "partisan coloring of the ballot."[10] The majority's improper reliance on this case, coupled with its failure to consider the popular name in conjunction with the ballot title, departs from what our standard and precedent requires.

We now turn to the majority's reliance on *Roberts v. Priest*[11] and *Crochet v. Priest*.[12] In *Roberts*, this court held that the popular name's reference to the increase of "*any sales tax*" conflicted with the ballot title, which provided for the increase of "*any* taxes."[13] The *Roberts* court reasoned that this was an issue of battling provisions of the same measure and that the voter could not possibly know which one controls. In *Crochet*, this court found issue with the term "video terminal games" because it was not defined in the popular name, but rather defined in two competing provisions of the ballot title.[14] This court was not concerned with the difference in the definitions, but instead "whether voters will be able to recognize

---

[10]*Id.* at 465, 677 S.W.2d at 847 ("[T]he popular name of the proposed amendment constitutes a partisan coloring of the ballot . . . ."); *see also id.* at 468, 677 S.W.2d at 849 ("The popular name is a clear-cut example of the partisan coloring of ballots which we have uniformly condemned in our decisions holding that a ballot['s popular] name must be fair and impartial.").

[11]341 Ark. 813, 20 S.W.3d 376 (2000).

[12]326 Ark. 338, 931 S.W.2d 128 (1996).

[13]*Roberts*, 341 Ark. at 822–23, 20 S.W.2d at 381.

[14]*Crochet*, 326 Ark. at 345–46, 931 S.W.2d at 132.

22

th[e] similarit[ies]."[15] Ultimately, this court opined that the term "video terminal games" was misleading and "tinged with partisan coloring" because it did not evoke gambling in any respect.[16]

Here, the majority cites *Roberts* and *Crochet* in opining that APA's use of "*medical marijuana*" in its popular name versus the ballot title's incorporation of a federal recreational trigger law is misleading. I disagree. When read together, APA's popular name delineates that this is an amendment regarding medical marijuana while its ballot title expounds to allow for recreational, or "adult," marijuana use in the State of Arkansas if such decriminalization occurs on a federal level. These two provisions do not pose a conflict of interpretation as articulated in the majority. There is nothing misleading as to the differences between APA's popular name and its ballot title. Just as the majority itself states that this federal trigger law is about the legalization for recreational use, the voters alike can come to the same realization because there are no competing provisions that would generate confusion. Nothing about the APA's popular name creates a misleading tendency as the majority suggests.

As the popular name relates to the amendment of Article 5, section 1 of the Arkansas Constitution, the majority misses the mark for the same reasons. The majority states that the popular name "does not invoke in the voters' minds rewriting [A]rticle 5, section 1 of the Arkansas Constitution." The majority again references what seems to be a new

---

[15]*Id.*, 931 S.W.2d at 132 (specifically whether the "voters will be able to determine that the term 'video terminal games' describes what are more commonly known as slot machines").

[16]*Id.*, 931 S.W.2d at 132.

requirement while employing a misinterpretation of *Roberts* and *Crochet*.  When read in concert with the ballot title, the APA's popular name is not misleading.

## B.  Ballot Titles

The requirements for ballot titles are straightforward, as well.  Ballot titles:  (1) must include an impartial summary of the proposed amendment that gives voters a fair understanding of the issues presented and of the scope and significance of the proposed amendment; (2) cannot omit material information that would give the voter serious ground for reflection; and (3) must be free from misleading tendencies that—whether by amplification, omission, or fallacy—thwart a fair understanding of the issues presented.[17]  A ballot title need not contain a synopsis of the proposed amendment or cover every detail of it.[18]

This court has stated time and again that the most significant rule regarding ballot titles is that they "be given *liberal construction and interpretation* in order that it secure the purposes of reserving to the people the right to adopt, reject, approve or disapprove legislation."[19]  It is not the job of this court to analyze the merits or faults of the proposed

---

[17]*May*, 359 Ark. at 106, 194 S.W.3d at 777; *Stiritz*, 2018 Ark. 281, at 4, 556 S.W.3d at 527.

[18]*Rose*, 2016 Ark. 339, at 4, 500 S.W.3d at 151.

[19]*Mitchell*, 2024 Ark. 148, at 2, ___ S.W.3d at ___ (citing *May*, 359 Ark. at 107, 194 S.W.3d at 777 (emphases added)); *see also Armstrong*, 2022 Ark. at 9, 652 S.W.3d at 174; *Knight*, 2018 Ark. at 7, 556 S.W.3d at 507; *Rose*, 2016 Ark. at 4, 500 S.W.3d at 152; *Wilson*, 2016 Ark. at 8, 500 S.W.3d at 166; *Cox*, 374 Ark. at 444, 288 S.W.3d at 595; *Ward*, 250 Ark. at 360, 86 S.W.3d at 891; *Fletcher v. Bryant*, 243 Ark. 864, 422 S.W.3d 698 (1968).

amendment; but instead, we function solely to review the measure to ensure that it is presented to the people for fair consideration.[20]

Here, the majority asserts that the ballot title is misleading because "it omits language stating that the proposed amendment would repeal the General Assembly's authority to amend Amendment 98 . . . ." The majority's issue is that the ballot title does not adequately spell out what "repealing Amendment 98, §§ 23 and 26 in their entirety" would entail.

However, considering the liberal construction and interpretation afforded to ballot titles, I do not find that this conflicts with our requirements that the voters must have a fair understanding of the issues presented. Contrary to the majority's argument, if a voter reads the ballot title and is adequately informed (as they are presumed to be), any questions or hesitation about this provision would be resolved. I neither find that the ballot title has a misleading tendency, nor—and more importantly—that it omits material information that would give the voters serious ground for reflection.

## II. *Conclusion*

In conclusion, I take this opportunity to address why our decision carries enormous weight. The most unique and glorious concept on which this nation was founded was our commitment to the idea that we were going to trust the people. It has been said before, our nation's founders came to a fork in the road, and rather than following the well-worn path traveled by tyrants and kings throughout history, they chose instead to trust their people with self-governance. They chose to trust our people with the liberty to speak freely, the

---

[20]*Id.*, 194 S.W.3d at 777.

25

liberty to bear arms, the liberty to worship according to our own conscience, *and the liberty to develop the process by which we govern ourselves.*

The State of Arkansas has required of those seeking ballot access a high burden with many hurdles. This is our legal process. Those laws that represent the will of the people must be enforced so long as they withstand constitutional scrutiny. When that onerous process has not been followed, this court has—on many occasions over the years—rightfully denied access to the ballot that I am certain has caused much dismay to those from whom access is desired. It is an understandable frustration in the moment that is overshadowed by a much greater and essential equity at play—we are a nation of laws and not men. And forever it must be. However, when all legal hurdles have been cleared, and we are tasked with making the final decision on sufficiency that tiptoes closely into the realm of judicial subjectivity, we must be faithful to evaluate on the basis of past precedent and through a lens of "liberal construction and interpretation"; ensuring that the benefit of the doubt rests with the people who have inherited the guarantee of liberty and the freedom to govern of themselves—the people of Arkansas.

For that reason, having analyzed the popular name and ballot title against the plain language of our standard, I find that neither are misleading. Therefore, I would grant APA's petition, deny PAK's request for relief, and find that APA's popular name and ballot title are not misleading.

BAKER and WOOD, JJ., join.

*Wright, Lindsey & Jennings LLP*, by: *Stephen R. Lancaster, Gary D. Marts, Jr., Erika Gee*, and *Elizabeth A. Kimbrell*, for petitioners.

26

*Tim Griffin*, Att'y Gen., by: *Justin Brascher*, Ass't Att'y Gen.; and *Jordan Broyles*, Sr. Ass't Att'y Gen., for respondent.

*Brett D. Watson*, *Attorney at Law, PLLC*, by: *Brett D. Watson*, for intervenors.